UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FUNCTIONAL HIIT FITNESS, LLC,

      Plaintiff,

v.

F45 TRAINING INCORPORATED,
ADAM GILCHRIST, ROBERT
DEUTSCH, MARC MARANO, LUKE
ARMSTRONG, and NICK ABRAHAMS,

      Defendants.

Case No. 5:22-cv-10168
District Judge Judith E. Levy
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 17, 18, 20, 48)

### I.    Introduction

This is a contract case involving franchise agreements.  Plaintiff Functional HIIT Fitness, LLC (Functional HIIT) entered into agreements to franchise three training studios with Defendant F45 Training Incorporated (F45).  *See* ECF No. 1.  The other named defendants, Adam Gilchrist (Gilchrist), Robert Deutsch (Deutsch), Marc Marano (Marano), Luke Armstrong (Armstrong), and Nick Abrahams (Abrahams), were all either officers or employees of F45 during the relevant period.  *See id*.  The complaint asserts the following 10 claims: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing

1

(Count II); fraud and misrepresentation (Count III); negligent misrepresentation (Count IV); unjust enrichment (Count V); violations of the Michigan Franchise Investment Law (MFIL) (Counts VI-VIII); violations of the California Franchise Investment Law (CFIL) (Count IX); and violations of the Delaware Deceptive Trade Practices Act (Count X).  (*Id.*, PageID.39-50).

Before the Court are Defendants' motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b) in which they raise numerous arguments that include failure to state a claim, lack of personal jurisdiction over the individual defendants, and issues of choice of law.  (ECF Nos. 17, 18, 20, 48).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 21).  The motions to dismiss are fully briefed, (Responses, ECF Nos. 34, 35, 38, 50; Replies, ECF Nos. 44, 45, 46, 51), and were considered at an in-person hearing on August 9, 2022, (ECF No. 51).  Accordingly, the motions are ready for consideration.

For the reasons that follow, the undersigned RECOMMENDS that the motions to dismiss be GRANTED IN PART and DENIED IN PART.  In particular, the undersigned RECOMMENDS the DISMISSAL of the following Defendants:

- Adam Gilchrist

- Robert Deutsch

2

- Luke Armstrong

- Nick Abrahams

The undersigned further RECOMMENDS the DISMISSAL of the following

claims:

- Breach of the Implied Covenant (Count II)

- MFIL Claims (Counts VI-VIII)

- CFIL Claim (Count IX)

- Delaware Uniform Deceptive Trade Practices Act Claim (Count X)

## II.    Background

The background is taken from the allegations in the complaint and attached

exhibits.[1]

F45 operates training studios "which provide[] exercise training that

involves alternating periods of short, intense anaerobic exercise." (ECF No. 1-1,

PageID.53).  F45 also offers individuals the opportunity to franchise a training

studio. *See id.*  This case concerns three Michigan training studios, located in

North Livonia, Northville/Plymouth, and Novi, that were established and operated

by Functional HIIT.  *See* ECF No. 1.  The governing franchise agreements were

entered into on April 26, 2019 (later amended on August 1, 2019), April 26, 2019

---

[1] The complaint runs 52 pages and 218 paragraphs.  With exhibits, the document is
733 pages.

(later amended on September 24, 2019), and September 30, 2019.  *See* ECF Nos.

1-6, 1-7, 1-8, 1-9, 1-13.  Donald Jordan (Jordan), the principal of Functional HIIT,

signed the agreements.  *See* ECF No. 1, PageID.1-2.

   Many of Functional HIIT's claims surround the various Franchise

Disclosure Documents created by F45.  *See id*., PageID.2-3.  The April 19, 2018

Franchise Disclosure Document explains that it

> summarizes certain provisions of your Franchise Agreement and any
> other information in plain English.  Read this disclosure document and
> all accompanying agreements carefully.  You must receive this
> disclosure document at least 14 calendar days before you sign a binding
> agreement with, or make any payment to, the franchisor or an affiliate
> in connection with the proposed franchise sale.  **Note, however, that
> no governmental agency has verified the information contained in
> this document.**

(ECF No. 1-1, PageID.53) (emphasis in original).  Functional HIIT, however,

alleges that it received and relied on an outdated Franchise Disclosure Document

when entering into the first two agreements and that it did not receive any

Franchise Disclosure Document before entering into the third agreement.  (ECF

No. 1, PageID.2-3).  Functional HIIT states that all of the named individual

defendants—Gilchrist, Deutsch, Marano, Armstrong, and Abrahams—helped

create and/or issue the various Franchise Disclosure Documents.  (*Id*., PageID.22).

   Jordan first reached out to F45 in March of 2019.  (*Id*., PageID.21).  He was

then put in touch with Marano, F45's President of U.S. Expansion.  (*Id*.).  During

this period, Jordan received the April 19, 2018 Franchise Disclosure Document.

(*Id*.).  However, Jordan later discovered that the April 19, 2018 Franchise Disclosure Document had already been superseded by the September 11, 2018 Franchise Disclosure Document.  (*Id*.).  Jordan has never received the September 11, 2018 Franchise Disclosure Document.  (*Id*.).

Additionally, on March 17, 2019, Marano emailed Jordan a "link to a spreadsheet for a financial model which showed a franchise studio reaching breakeven on case flow of just over four (4) months and a payback period of eighteen (18) months with an internal rate of return (IRR) of around 66%."  (*Id*., PageID.23).  Marano did so even though Federal Trade Commission (FTC) rules prohibit franchisors from providing financial performance information outside of a Franchise Disclosure Document.  (*Id*., PageID.22-23).  Functional HIIT now alleges that the spreadsheet's "financial performance representations are, and were at the time they were made, false, inaccurate, incomplete, unfair, deceptive, and/or misleading, and were made to induce [Functional HIIT] into a franchise relationship."  (*Id*., PageID.23).

Marano continued to make "a number of financial performance representations" to Jordan during telephone conversations held throughout March and April of 2019, that "were false, inaccurate, incomplete, unfair, deceptive, and/or misleading, and were willingly made for the purpose of inducing [Functional HIIT] into a franchise relationship with F45."  (*Id*., PageID.24-25).

For example, Marano told Jordan that if he "followed the F45 program, his studios would break even in three months and reach an [earnings before interest, taxes, depreciation, and amortization] of 33% by the end of year one."  (*Id.*, PageID.25).

Then, F45 issued the April 18, 2019 Franchise Disclosure Document containing a number of changes from the April 19, 2018 Franchise Disclosure Document that Jordan had previously received.  (*Id.*, PageID.26-27).  Marano emailed Jordan about the updated Franchise Disclosure Document on April 23, 2019, warning Jordan that the new Franchise Disclosure Document would come into effect on May 1, 2019.  (*Id.*, PageID.27-28).  Marano stated that "the largest change is the franchise royalty fee is (sic) moving from **$2500** per month to **$2500 or 7.5%** of the monthly turnover which ever is the greater."  (*Id.*, PageID.28) (emphasis in original).  Three days later, on April 26, 2019, Functional HIIT entered into the first two franchise agreements.  (*Id.*).

Later, on July 22, 2019, Armstrong sent Jordan two identical emails inviting Jordan to click on a link to access either the same or a similar spreadsheet previously sent to Jordan by Marano.  (*Id.*, PageID.30).  The spreadsheet represented "that for a total investment of €194,500 (which based upon mid-market exchange rates for July 22, 2019 would amount to $217,601 – and which amount would probably not even cover the leasehold improvements for a franchise), there would be a cash flow break even at just over four (4) months, and a payback period

6

on investment of eighteen (18) months, which is an IRR of about 66%." (*Id*.).

Functional HIIT alleges that the spreadsheet's "financial performance

representations are false, inaccurate, incomplete, unfair, deceptive, and/or

misleading, and were knowingly and intentionally made to induce [Functional

HIIT] into a franchise relationship with F45." (*Id*., PageID.31). Functional HIIT

entered into the third franchise agreement on September 30, 2019. (*Id*.,

PageID.31-32). Functional HIIT believes that the third franchise agreement is

based on the April 18, 2019 Franchise Disclosure Document, which Jordan did not

receive before entering into the third franchise agreement. (*Id*., PageID.32).

In addition to the issues related to the Franchise Disclosure Documents,

Functional HIIT also alleges breach of contract. (*Id*., PageID.3). For example,

Functional HIIT says that F45 "charg[ed] fees and costs that [were] not set forth or

otherwise memorialized/reserved in the applicable Franchise Agreement." (*Id*.).

In particular, Item 7 of the April 19, 2018 Franchise Disclosure Document lists the

costs of "Leasehold Improvements" as being between $1,000 and $10,000. (*Id*.,

PageID.34). However, Functional HIIT spent around $187,000 to make leasehold

improvements at its North Livonia studio. (*Id*., PageID.35). This amount is

comparable to the amount spent on leasehold improvements at other Michigan F45

franchise locations. (*Id*., PageID.35-36). Functional HIIT also alleges that it was

7

overcharged by F45 for heartrate monitors, and that F45 failed to disclose the cost of music licensing fees.  (*Id*., PageID.36-38).

### III.    Analysis

#### A.    Legal Standards

##### 1.    Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of establishing through 'specific facts' that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  Where the court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  The Court does "not weigh the facts disputed by the parties but instead consider[s] the pleadings in the light most favorable to the plaintiff." *Id*.  The Court may, however, "consider the defendant's undisputed factual assertions." *Huizenga v. Gwynn*, 225 F. Supp. 3d 647, 654-655 (E.D. Mich. 2016).

##### 2.    Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

## B.     Threshold Issues

In order to properly determine whether the claims asserted in the complaint state claims sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion, it must first be determined whether there is personal jurisdiction over each of the individual Defendants and also to what extent the choice of law provision in the franchise agreements controls. Ultimately, as will be explained, the undersigned concludes

that there is not personal jurisdiction over any of the individual Defendants other than Marano and that the choice of law provision in the agreements governs Functional HIIT's claims under both contract and tort law.

1.    Personal Jurisdiction

The individual Defendants—Gilchrist, Deutsch, Marano, Armstrong, and Abrahams—all argue that personal jurisdiction over them is lacking.

"In a diversity case, as here, personal jurisdiction over a defendant is proper only if it comports with the requirements of the state long-arm statute and federal constitutional due process." *SFS Check, LLC v. First Bank of Delaware*, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013), aff'd, 774 F.3d 351 (6th Cir. 2014). The Sixth Circuit has held that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Children's Legal Servs., PLLC v. Shor Levin & Derita, PC*, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012) (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)). "The Michigan Supreme Court has construed Michigan's Long–Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process." *Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F.Supp.2d 734, 741 (E.D. Mich. 2004); *see also SFS Check, LLC*, 990 F. Supp. 2d at 771 ("Under Michigan law, limited personal

10

jurisdiction may be exercised over an individual if, for example, he or she (a) transacts any business within the state, (b) does or causes an act to be done, or consequences to occur, in the state, (c) or owns, uses, or possesses real or tangible personal property in the state.") (citing MCL § 600.705).

A court can constitutionally exercise limited personal jurisdiction over an out-of-state defendant where the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); accord *Theunissen v. Matthews*, 935 F.2d 1454, 1459-1461 (6th Cir. 1991). Minimum contacts are satisfied where the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). " 'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction, is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.' " *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). "The defendant's conduct must be such that he should reasonably anticipate being haled into court." *SFS Check, LLC*, 990 F. Supp. 2d at 771.

The Sixth Circuit has created a three-part test to determine whether the exercise of personal jurisdiction would comport with due process.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

" '[J]urisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,' " however, "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 697-698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)) (rejecting strict formulation of "fiduciary shield doctrine," which "prevents the exercise of personal jurisdiction whenever an out-of-state officer's contacts occur by virtue of her official capacity"). In other words, "[t]he fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation." *SFS Check, LLC*, 990 F. Supp. 2d at 771. "Further, the fact that an agent of a company has an ownership interest or otherwise exercises control over the company is not a sufficient basis on which to assert limited personal

12

jurisdiction over that individual in another state in which the company does business." *Id*. Ultimately, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp.*, 204 F.3d at 698.

In sum, Functional HIIT bears the burden of establishing a prima facie case as to each of the individual Defendants that this Court can exercise personal jurisdiction over them in a manner that comports with due process under the three-factor test set forth by the Sixth Circuit. The undersigned will now consider whether Functional HIIT has met this burden as to each of the five individual Defendants.

a.    Armstrong

Functional HIIT states in its complaint that Armstrong is currently Chief Revenue Officer of F45, however, when the franchise agreements were signed, he was Global Head of Sales. (ECF No. 1, PageID.6-7). Armstrong is an Australian citizen and a resident of Austin, Texas. (*Id*., PageID.6). On July 22, 2019, Armstrong sent two emails to Jordan that included links to a spreadsheet titled

13

"F45 TRANING EUR FINANCIAL MODEL." (*Id.*, PageID.30).  Functional HIIT

alleges that this spreadsheet contained false financial representations.  (*Id.*).

Armstrong argues that these emails are insufficient to establish personal

availment.  To resolve this issue, the Court must first consider whether Armstrong

acted or caused a consequence such that he invoked the benefits and protections of

Michigan law.  *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir.

2017).  Doing so ensures that Armstrong could have "anticipate[d] being haled into

court there" and "ensures that he is not brought into a Michigan court solely as a

result of random, fortuitous or attenuated contacts."  *Id.* (internal quotations marks

and citations omitted).  "In the Sixth Circuit, purposeful availment is judged by the

quality, not the quantity of e-mail communications."  *Guangzhou Consortium*

*Display Prod. Co., Ltd. v. PNC Bank, Nat'l Ass'n*, 924 F. Supp. 2d 800, 811-812

(E.D. Ky. 2013).  Moreover, the Sixth Circuit "has found that contacts lack quality

when they are initiated by the plaintiff rather than the defendant, in part because

'[t]he unilateral activity of those who claim some relationship with a non-resident

defendant cannot satisfy the requirement of contact with the forum.' "  *Air Prods.*

*& Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) (quoting

*LAK, Inc. v. Deer Creek Enter.* 885 F.2d 1293, 1301 (6th Cir. 1989)).

Here, the two identical emails that Armstrong sent to Jordan appear to be

form emails which were sent after Jordan contacted F45 to express interest in

14

franchise opportunities. *See* ECF Nos. 1-10; 1-11. The quality of these emails along with the fact that Jordan was the initiating party do not establish personal availment. Additionally, two emails standing alone are not enough to establish that Armstrong had sufficient personal involvement to establish the required minimum contacts with Michigan. *See, e.g.*, *SFS Check, LLC*, 990 F. Supp. 2d at 772 (noting that two telephone calls where corporate officer acting in his or her official capacity allegedly made misrepresentation were insufficient to establish personal jurisdiction over an out-of-state corporate officer).

In sum, the exercise of personal jurisdiction over Armstrong would run afoul of federal constitutional due process. For this reason, Armstrong should be dismissed as a defendant in this action.

b.      Gilchrist

Functional HIIT states in its complaint that Gilchrist is Director and Chief Executive Officer of F45. (ECF No. 1, PageID.6). It further states that he is an Australian citizen and resident of Austin, Texas.[2] (*Id*.). Gilchrist did not communicate directly with Jordan, and it is not alleged that Gilchrist ever visited Michigan. The complaint only states general allegations of wrongdoing against Gilchrist. (ECF No. 1, PageID.48) ("Mr. Gilchrist, Mr. Deutsch, Mr. Marano, Mr.

---

[2] In his motion to dismiss, Gilchrist states that he actually lives in Florida. (ECF No. 18, PageID.927 n.1). This "error" does not affect the Court's personal jurisdiction analysis.

Armstrong, and Mr. Abrahams, in one way or another, were involved in the making of the outdated, stale, inaccurate, incomplete, unfair, deceptive, and/or misleading representations.").

As previously stated, "[t]he fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation." *SFS Check, LLC*, 990 F. Supp. 2d at 771. Furthermore, Gilchrist's signing of the franchise agreements alone is insufficient to subject him to this Court's jurisdiction. *Zahner Hansen Cost. Grp., Inc. v. Hotwire Elec., Inc.*, No. 3–14–1067, 2014 WL 2872212, at *2 (M.D. Tenn. June 24, 2014) ("The Court agrees that Defendant Carron cannot be subject to this Court's jurisdiction simply because he signed the contracts with Plaintiff. He signed the contracts as President and CEO for Defendant Hotwire Electric, not in an individual capacity."). Accordingly, Functional HIIT has failed to make a prima facie showing of personal jurisdiction as to Gilchrist, and he should therefore be dismissed from the case.

c.     Abrahams

Functional HIIT states in its complaint that Abrahams was Director of Sales and Business Development of F45. (ECF No. 1, PageID.7). It further states that

16

he is an Australian citizen and resident of Los Angeles, California. [3]  (*Id.*).

Attached to Functional HIIT's response to Abrahams' motion to dismiss are emails

exchanged between Abrahams and Jordan regarding an additional Michigan

franchise location.  *See* ECF No. 38-2.  Functional HIIT alleges that Abrahams

committed fraud, fraudulent inducement, misrepresentation, and negligent

misrepresentation along with violations of several statutes.  (ECF No. 1,

PageID.40-42).  In further alleges that Abrahams, along with all of the other

individual Defendants, "assisted in the development, construction, and/or issuance

of the April 19, 2018 Franchise Disclosure Document."  (*Id.*, PageID.22).

    Abrahams argues that the aforementioned emails are insufficient to establish

personal availment.  To resolve this issue, the Court must first ask whether

Abrahams acted or caused a consequence such that he invoked the benefits and

protections of Michigan law.  *MAG IAS Holdings, Inc.*, 854 F.3d at 900.  Notably,

"[t]he Supreme Court and the Sixth Circuit have both recognized that the analysis

shifts slightly when the application of the purposeful availment prong turns on a

tort or fraud-based claim."  *D.C. Micro Dev., Inc. v. Lange*, 246 F. Supp. 2d 705,

710 (W.D. Ky. 2003).  For instance, "in *Neal v. Janssen*, 270 F.3d 328 (6th Cir.

2001), the Sixth Circuit concluded that communications with the forum state that

---

[3] In a declaration, Abrahams states that he actually lives in Sydney, Australia.
(ECF No. 20-1, PageID.999-1000).  This "error" does not affect the Court's
personal jurisdiction analysis.

themselves give rise to the cause of action are sufficient to support a finding of personal jurisdiction over a non-resident defendant making the tortious contact." *Id*. at 710-711.  Accordingly, if the emails Abrahams sent to Jordan contained fraudulent statements, the Court could properly exercise personal jurisdiction over him.

That said, Functional HIIT does not identify any fraudulent statement(s) contained in the emails.  Instead, it argues that the April 19, 2018 Franchise Disclosure Document which it alleges Abrahams helped develop, construct, and/or issue contains misrepresentations.  (ECF No. 38, PageID.1468).  This may be true, but it does not help Functional HIIT establish a prima facie case for personal jurisdiction over Abrahams.  Because Abrahams' minimal contacts with the State of Michigan were not themselves tortious, there is no basis for this Court to exercise personal jurisdiction over Abrahams and he should be dismissed from the case. *See, e.g.*, *SFS Check, LLC*, 990 F. Supp. 2d at 772 (E.D. Mich. 2013) (noting that two telephone calls where corporate officer acting in his or her official capacity allegedly made misrepresentation were insufficient to establish personal jurisdiction over an out-of-state corporate officer).

d.    Marano

Functional HIIT states in its complaint that Marano was President of F45's U.S. expansion.  (ECF No. 1, PageID.6).  It further states that he is an Australian

18

citizen and resident of Los Angeles, California.  (*Id*.).  When Jordan reached out to

F45 in March of 2019, he was put in contact with Marano.  (*Id*., PageID.21).  At

some point during March of 2019, Marano provided Jordan with a Franchise

Disclosure Document dated April 19, 2018.  (*Id*.).  This document was apparently

out of date and had been superseded by a Franchise Disclosure Document dated

September 11, 2018.  (*Id*.).

    Additionally, on March 17, 2019, Marano emailed Jordan a "link to a

spreadsheet for a financial model which showed a franchise studio reaching

breakeven on case flow of just over four (4) months and a payback period of

eighteen (18) months with an internal rate of return (IRR) of around 66%."  (*Id*.,

PageID.23).  Functional HIIT alleges that "[t]hose financial performance

representations are, and were at the time they were made, false, inaccurate,

incomplete, unfair, deceptive, and/or misleading, and were made to induce

[Functional HIIT] into a franchise relationship."  (*Id*.).  On March 26, 2019 and

March 30, 2019, Jordan emailed Marano questions related to the spreadsheet.  (*Id*.,

PageID.23-24).  Marano responded via email on March 31, 2019, agreeing to

speak with Jordan soon.  (*Id*., PageID.24).

    During the months of March and April of 2019, Marano and Jordan "held a

number of lengthy telephone discussions about the financial model for the

franchised business."  (*Id*.).  Marano allegedly "made a number of financial

performance representations" that were not contained in the April 19, 2018 Franchise Disclosure Document.  (*Id.*, PageID.24-25).  One alleged example was Marano's representation that if Jordan "followed the F45 program, his studios would break even in three months and reach an EDITBA of 33% by the end of year one." (*Id.*, PageID.25).  Functional HIIT alleges that the representations made by Marano "are, and were at the time known to be, false, inaccurate, incomplete, unfair, deceptive, and/or misleading, and were made to induce [Functional HIIT] into a franchise relationship with F45." (*Id.*).

On April 23, 2019, Marano emailed Jordan to inform him that on May 1, 2019, a new Franchise Disclosure Document would come into effect.  (*Id.*, PageID.27-28).  The new Franchise Disclosure Document made a number of changes, including a change to the franchise royalty fee.  (*Id.*, PageID.28).  On April 26, 2019, Functional HIIT entered into two franchise agreements with F45— one for a franchise in Livonia, Michigan and the other for a franchise in Northville, Michigan.  (*Id.*).

As outlined above, the complaint contains allegations that Marano had extensive contacts with Jordan regarding the opening of two franchise locations in Michigan.  Functional HIIT specifically states that Marano told Jordan that if he "followed the F45 program, his studios would break even in three months and reach an EDITBA of 33% by the end of year one." (*Id.*, PageID.25).  As

20

previously stated, "in *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), the Sixth Circuit concluded that communications with the forum state that themselves give rise to the cause of action are sufficient to support a finding of personal jurisdiction over a non-resident defendant making the tortious contact." *D.C. Micro Dev., Inc.*, 246 F. Supp. 2d at 710-711. Here, Functional HIIT is suing Marano for fraud, fraudulent inducement, misrepresentation, and negligent misrepresentation along with violations of several statutes. (*Id.*, PageID.40-42). Thus, the aforementioned alleged misrepresentations arising out of Marano's communications with the forum state are sufficient to establish purposeful availment.

The Sixth Circuit stated in *Balance Dynamics Corp.* that "[w]hile it is true that 'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,' *Weller v. Cromwell Oil Co.*, 504 F.2d at 929, we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." 204 F.3d at 698. In a case, such as here, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id*.

21

This case is also distinct from *SFS Check, LLC*. That case involved two telephone calls where "[t]here [was] no allegation, or evidence presented to the Court, that [the out-of-state agent] knew that she was talking on the telephone to individuals in Michigan." *SFS Check, LLC*, 990 F. Supp. 2d at 773. Additionally, the plaintiff failed to establish that the "two alleged telephone calls constitute[d] [the out-of-state agent's] 'active participation' in the allegedly tortious conduct." *Id*. Here, however, Marano was speaking to Jordan, a Michigan individual, about the establishment of two F45 franchises in the State of Michigan. Moreover, Marano is alleged to have engaged in tortious conduct including fraud, fraudulent inducement, misrepresentation, and negligent misrepresentation during his conversations with Jordan. The factual differences between *SFS Check, LLC* and the instant case are crucial to the personal availment analysis, and Functional HIIT has successfully established that Marano personally availed himself of this forum.

The final two prongs of the *Mohasco* personal jurisdiction test, *supra*, are also met here. The second prong requires the Court to determine whether the cause of action arises from Marano's activities in Michigan. *Mohasco Indus., Inc.*, 401 F.2d at 381. "The Sixth Circuit has stated that the arising from requirement is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state." *D.C. Micro Dev., Inc.*, 246 F. Supp. 2d at 712 (internal quotation marks and citation omitted). Here, the facts alleged in the complaint are

22

that Marano along with others sold franchises to Functional HIIT, and that in order

to do so, he[DM1] made misrepresentations and fraudulent statements to induce

Functional HIIT into the purchases.  *See* ECF No. 1.

Regarding, the third and final prong, the Sixth Circuit has stated that "when

the first two elements are met, an inference arises that the third, fairness, is also

present; only the unusual case will not meet this third criterion*." First Nat'l Bank*

*of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982).  This is

not an unusual case, and the undersigned believes exercising personal jurisdiction

over Marano is fair.  Thus, Marano is not entitled to dismissal on personal

jurisdiction grounds.  His arguments regarding failure to state a claim will be

considered later in this Report and Recommendation.

e.   Deutsch

Functional HIIT states in its complaint that Deutsch was Co-Chief Executive

Officer of F45.  (ECF No. 1, PageID.7).  It further states that he is an Australian

citizen and resident of Australia.  (*Id.*).  Deutsch did not communicate directly with

Jordan, and it is not alleged that Deutsch ever visited Michigan.  The complaint

only states general allegations of wrongdoing against Deutsch.  (*Id.*, PageID.48)

("Mr. Gilchrist, Mr. Deutsch, Mr. Marano, Mr. Armstrong, and Mr. Abrahams, in

one way or another, were involved in the making of the outdated, stale, inaccurate,

incomplete, unfair, deceptive, and/or misleading representations.").

23

As stated above, "[t]he fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation." *SFS Check, LLC*, 990 F. Supp. 2d at 771.  Furthermore, Deutsch's countersigning of the franchise agreements alone is insufficient to subject him to this Court's jurisdiction. *Zahner Hansen Cost. Grp., Inc.*, 2014 WL 2872212, at *2 ("The Court agrees that Defendant Carron cannot be subject to this Court's jurisdiction simply because he signed the contracts with Plaintiff.  He signed the contracts as President and CEO for Defendant Hotwire Electric, not in an individual capacity.").  Accordingly, Functional HIIT has failed to make a prima facie showing of personal jurisdiction as to Deutsch, and he should therefore be dismissed from the case.

### 2.    Choice of Law

Functional HIIT's asserts a number of statutory claims, including claims under Michigan, California, and Delaware law.  Defendants argue that Functional HIIT is precluded from asserting claims under Michigan and California law because the parties are governed by a choice-of-law provision found in their franchise agreements, which states: "THIS AGREEMENT WILL BE GOVERNED BY AND INTERPRETED AND CONSTRUED UNDER DELAWARE LAW (EXCEPT FOR DELAWARE CONFLICT OF LAW RULES)."  (ECF No. 1, PageID.531, 610, 697) (capitalization in original).

In order to determine the validity of the agreement's choice-of-law

provision, this Court must apply "the choice-of-law rules of the state in which the

district court sits—in this case, Michigan." *Baker Hughes Inc. v. S&S Chem.,*

*LLC*, 836 F.3d 545, 560 (6th 2016).  Michigan applies the Restatement (Second) of

Conflicts of Laws § 187.  *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448

Mich. 113, 528 N.W.2d 698, 703-704 (1995).  Under § 187(2), a choice-of-law

provision will apply unless either:

> (a) the chosen state has no substantial relationship to the parties or the
> transaction and there is no other reasonable basis for the parties' choice,
> or
>
> (b) application of the law of the chosen state would be contrary to a
> fundamental public policy of a state which has a materially greater
> interest than the chosen state in the determination of the particular issue
> and which, under the rule of § 188, would be the state of the applicable
> law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971); *see also Banek, Inc. v.*

*Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993).  Because the parties

focus on the fundamental policy factor, the Court will as well.  "In order for the

chosen state's law to violate the fundamental policy of [the other locale], it must be

shown that there are significant differences between the application of the law of

the two states." *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1123 (6th Cir. 1987) (citation omitted).[4]

Functional HIIT argues that the MFIL provides broader protections in franchise cases than provided by any comparable Delaware statute and that the MFIL represents a fundamental public policy of Michigan.  Sixth Circuit case law supports Functional HIIT's position that the MFIL represents a fundamental public policy of Michigan.  *See Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 220 (6th Cir. 2021); *Banek, Inc.*, 6 F.3d at 361-362, 362 n.3.

Notably, however, forum-selection clauses are explicitly prohibited by the MFIL, but choice-of-law provisions are not, suggesting that the Michigan legislature did not intend to prohibit such provisions.  *Lakeside Surfaces, Inc.*, 16 F.4th at 221-222 ("Recognizing the MFIL's public policy barring forum-selection clauses requiring litigation in out-of-state courts and noting the absence of a public policy rejecting choice-of-law provisions, we upheld the choice-of-law provision, concluding that litigating in Michigan does not require that Michigan law must govern the dispute.") (internal quotation marks and citation omitted); *see also ITW*

---

[4] Functional HIIT also argues that the choice-of-law provision is limited to governance of the agreement and does not apply to its claims outside of the agreement such as pre-contractual fraudulent inducement.  This argument is inconsistent with Sixth Circuit law and should be rejected.  *See Banek Inc. v. Yogurt Ventures U.S.A., Inc.,* 6 F.3d 357, 363 (6th Cir. 1993) (choice-of-law provision applied to fraudulent inducement because the "claims of fraud and misrepresentation . . . are directly related to the franchise agreement.").

*Food Equip. Grp. LLC v. Walker*, No. 1:12–CV–119, 2012 WL 4867440, at *3-4

(W.D. Mich. Oct. 15, 2012) (declining to apply MFIL in case where there was an

Ohio choice-of-law provision after "not find[ing] that applying Ohio law would be

contrary to Michigan's fundamental public policy").

Despite guidance from the Sixth Circuit suggesting that the MFIL does not

prohibit choice-of-law provisions and that they may be enforced in Michigan,

Functional HIIT nonetheless argues that state court cases suggest otherwise.

Functional HIIT primarily relies on *Martino v. Cottman Transmission Sys.*, 218

Mich. App. 54, 554 N.W.2d 17 (1996).

*Martino* involved the MFIL provisions found in M.C.L. § 445.1527, which

includes "the requirement that, at least ten business days before executing a

franchise agreement, the franchisor must notify the prospective franchisee of

contractual provisions which the statute renders unenforceable." 218 Mich. App.

at 59-60. The Michigan Court of Appeals found "compelling evidence that, in this

state, Michigan has a materially greater interest than Pennsylvania in applying its

franchise laws." *Id*. at 61. This is because "[a]s gleaned from the MFIL,

Michigan's notice requirements are designed to make certain contract provisions

illegal and to protect potential franchisees from the superior bargaining power of

franchisors." *Id*. The court of appeals further stated that "[a]pplying Pennsylvania,

rather than Michigan, law would result in a substantial loss of protection provided

27

by the MFIL.  As franchisors under Pennsylvania law do not have to provide the

notice required by the MFIL, Pennsylvania's franchise law violates the

fundamental public policy of Michigan."  *Id*.  Unlike Michigan law, Pennsylvania

law lacked the remedy of recission.  *Id*. at 59.

Functional HIIT also relies on *Buist v. Dig. Message Sys. Corp*, No. 229256,

2002 WL 31957703 (Mich. Ct. App. Dec. 27, 2002) (unpublished).[5]   In *Buist*, the

court of appeals declined to apply the parties' choice of Florida law because

Florida franchise law provided "minimal protections" compared to the MFIL, and

it was doubtful that Florida law would apply to an out-of-state franchisee.  *Id*. at

*4.

This case is distinguishable from *Martino* and *Buist*.  Not only does this case

involve different provisions of the MFIL—regarding notice—but it also involves a

different state law.  Delaware law differs from the laws of both Pennsylvania and

Florida.  As F45 points out, under Delaware common law, recission of a franchise

agreement is available as a remedy for fraud, misrepresentation, or mistake and

even for breach of contract.  *See, e.g.*, *Schlosser & Dennis, LLC v. Traders Alley,

LLC*, No. CV N16C-05-190 RRC, 2017 WL 2894845, at *9-10 (Del. Super. Ct.

July 6, 2017) ("Delaware law provides that a claim for equitable rescission can be

---

[5] Under Mich. Ct. R. 7.215(C)(1) explains that "[a]n unpublished opinion is not
precedentially binding under the rule of stare decisis."

based on grounds other than fraud, misrepresentation, or mistake, including breach of contract."). Thus, Functional HIIT is able to sue for recession under both Michigan statutory law and Delaware common law. *See Tele-Save Merch. Co.*, 814 F.2d at 1139 (noting that "[o]ne may not determine conclusively from [the] omission [of a protective statute in a chosen state] that the application of [that state's] law would be contrary to [the forum state's] policy"). Additionally, whether it is easier under Michigan law than Delaware law to obtain recession is not reason enough to disregard a valid choice-of-law provision. *See Banek*, 6 F.3d at 363 ("It is not sufficient for plaintiff to simply assert that Michigan law should apply 'merely because a different result would be reached under' Georgia law.") (quoting *Tele-Save Merch. Co.*, 814 F.2d at 1139); *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 740 (6th Cir. 1999).

Functional HIIT further argues that the MFIL should apply "to this dispute as Defendant F45 was well aware of the MFIL provisions by having [Functional HIIT] initial Attachment G of each of the three Franchise Agreements that the [Functional HIIT] was domiciled and opening a franchise in '**Michigan,** [and] at least 10 business days before execution of the Franchise Agreement . . .' it received the Franchise Disclosure Document." (ECF No. 34, PageID.1096-1097) (citing ECF No. 1-6, PageID.550; ECF No. 1-8, 629; ECF No. 1-13, 716) (emphasis in originals)). However, F45's assumed awareness of the MFIL and its provisions

does not affect the analysis of whether the fundamental public policy of Michigan prohibits the enforcement of the choice-of-law provision contained in the three franchise agreements.  Even if F45 chose to abide by some of the MFIL's provisions, this choice does not then negate the otherwise valid choice-of-law provision.

Under these circumstances, enforcement of the choice-of-law provision would not run contrary to a fundamental public policy of Michigan.  Accordingly, the contractual choice-of-law provision should be enforced.

In addition to asserting claims under the MFIL, Functional HIIT also asserts a claim under California law, the CFIL.  The CFIL has an anti-waiver provision that could operate to void a contractual choice-of-law provision.  Cal. Corp. Code § 31512 ("Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void.").  However, California's interest in this case is tenuous at best.  At the time the franchise agreement was signed, F45 was headquartered in California, but little else concerning this case occurred in that state.

Moreover, Functional HIIT has cited no authority for the proposition that it can pick and choose the statutes it likes best from across the country and have them all apply simultaneously to the same dispute.  Functional HIIT asserts claims under

the statutes of three separate states—Delaware, Michigan, and California—and in

so doing attempts to fashion together greater franchisee protections than exist in

any particular state.  This is a misuse of Michigan's choice-of-law rules.

In sum, the Delaware choice-of-law provision should govern this dispute and

Functional HIIT's claims under the MFIL and CFIL should be dismissed.

### B.    Plausibility of Functional HIIT's  Claims

As stated above, Functional HIIT's complaint asserts the following claims:

breach of contract (Count I); breach of the implied covenant of good faith and fair

dealing (Count II); fraud and misrepresentation (Count III); negligent

misrepresentation (Count IV); unjust enrichment (Count V); violations of the

MFIL (Counts VI-VIII); violations of the CFIL (Count IX); and violations of the

Delaware Deceptive Trade Practices Act (Count X).  (ECF No. 1, PageID.39-50).

Defendants contend the claims fail to satisfy the pleading requirements under Rule

12(b)(6).  Each claim will be addressed in turn below.

### a.    Breach of Contract (Count I)

Functional HIIT's first claim is for breach of contract against F45.  Under

Delaware law, to state a breach of contract claim, "a plaintiff must establish (1) the

existence of a contract; (2) breach of an obligation imposed by the contract; and (3)

resulting damage to the plaintiff." *Micro Focus (US), Inc. v. Ins. Servs. Office,*

*Inc.*, 125 F. Supp. 3d 497, 500 (D. Del. 2015) (citing *VLIW Tech., LLC v. Hewlett-*

*Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).  At issue in this case is element two, breach of an obligation imposed by the contract.

Functional HIIT has adequately pleaded a breach of contract by F45.  For instance, in the complaint, Functional HIIT alleges that "this case concerns a franchisor (F45) who has breached contractual commitments to a franchisee (FHF) by, among other things, charging fees and costs that are not set forth or otherwise memorialized/reserved in the applicable Franchise Agreement."  (ECF No. 1, PageID.3).  In particular, Item 7 of the April 19, 2018 Franchise Disclosure Document lists the costs of "Leasehold Improvements" as being between $1,000 and $10,000.  (*Id.*, PageID.34).  However, Functional HIIT spent around $187,000 to make leasehold improvements at its North Livonia studio.  (*Id.*, PageID.35).  This amount is comparable to the amount spent on leasehold improvements at other Michigan F45 franchise locations.  (*Id.*, PageID.35-36).  Functional HIIT also alleges that it was overcharged by F45 for heartrate monitors, and that F45 failed to disclose the cost of music licensing fees.  (*Id.*, PageID.36-38).

As outlined above, Functional HIIT has identified multiple contractual provisions and explained how F45 allegedly breached those provisions.  While Functional HIIT's breach of contract claim may or may not ultimately succeed, it has been sufficiently pleaded to withstand a motion to dismiss.  Accordingly, F45's motion should be denied as to Count I.

2.      Breach of the Implied Covenant (Count II)

Functional HIIT's second claim is for breach of the implied covenant of good faith and fair dealing against F45.  Under Delaware law, to state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege (1) a specific implied contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damage to the plaintiff.  *Kuroda v. SPJC Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).  Importantly, "the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Id*.  Moreover, "[c]onsistent with its narrow purpose, the implied covenant is only rarely invoked successfully." *Id*.

Here, Functional HIIT argues that it "has sufficiently pled that Defendant F45's conduct was not appropriate or done in good faith in light of the COVID-19 pandemic."  (ECF No. 34, PageID.1104).  Essentially, Functional HIIT is arguing "that the COVID-19 pandemic was an unanticipated development, and F45 had an implied duty of good faith to not charge royalties for some unspecified period in light of that development. . . ."  (ECF No. 44, PageID.1513).  F45 responds that the contract had a *force majeure* provision that Functional HIIT failed to abide by. The *force majeure* provision states:

> Upon the occurrence of an event of Force Majeure, the party affected thereby must give prompt notice thereof to the other party, together

33

with a description of the event, the duration for which the party expects its ability to comply with the provisions of the Agreement to be affected, and a plan for resuming operation under the Agreement, which the party must promptly undertake and maintain with due diligence. Such affected party will be liable for failure to give timely notice only to the extent of damage actually caused. If an event of Force Majeure occurs, then, in addition to payments required under <u>Section 17.C.(5)</u>, Franchisee will continue to be obligated to pay to Franchisor any and all amounts that it was obligated to pay in accordance with the terms of this Agreement prior to the occurrence of such event, and the Indemnitees will continue to be indemnified and held harmless by Franchisee in accordance with <u>Section 15</u>. Except as provided in <u>Section 17.C.(5)</u> and the immediately preceding sentence, neither party will be held liable for a failure to comply with any terms and conditions of this Agreement when such failure is caused by an event of Force Majeure.

(ECF No. 1-1, PageID.168) (underlining in original).

F45 highlights that under Delaware law, "[e]xisting contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain[.]" Accordingly, because the contract included a *force majeure* provision that Functional HIIT could have potentially utilized to escape its obligations under the contract during the COVID-19 pandemic, Functional HIIT cannot ask this Court to now insert a different obligation on F45. Accordingly, Functional HIIT's claim is for breach of the implied covenant of good faith and fair dealing should be dismissed.

c.     Fraud and Misrepresentation (Count III) and Negligent Misrepresentation
(Count IV)

Functional HIIT's third claim is for fraud and misrepresentation against all

Defendants.  However, this claim will only be analyzed as to F45 and Marano

because, as discussed above, the undersigned has concluded that the Court lacks

personal jurisdiction over the other named individual Defendants.

Similarly, Functional HIIT's fourth claim is for negligent misrepresentation

against all Defendants.  This claim, too, will only be analyzed as to F45 and

Marano.

To state a claim for fraud under Delaware law, a plaintiff must allege: (1) a

false representation of fact; (2) the defendant's knowledge or belief that the

representation was false, or was made with reckless indifference to the truth; (3) an

 intent to induce the plaintiff to act; (4) the plaintiff's justifiable reliance upon the

representation; and (5) damage to the plaintiff as a result of such reliance.  *Hauspie*

*v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008).  To state a claim for

negligent misrepresentation under Delaware law, a plaintiff must allege: "(1) the

existence of a pecuniary duty to provide accurate information; (2) the supplying of

false information; (3) that the defendant failed to exercise reasonable care in

obtaining or communicating the information; and (4) that the plaintiff suffered a

pecuniary loss caused by reliance upon the false information."  *Kuhn Const. Co. v.*

*Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012).

35

Functional HIIT's claims of fraud and negligent misrepresentation focus on

three sources of information that it claims contained misrepresentations and/or

fraudulent information: (1) a spreadsheet titled "F45 TRANING EUR

FINANCIAL MODEL"; (2) Marano's statements as detailed previously; and (3)

statements contained in one or more Franchise Disclosure Document.  For

example, Functional HIIT alleges that F45 concealed the following difference

between the April 19, 2018 Franchise Disclosure Document and the April 18, 2019

Franchise Disclosure Document:

> a. An increase in the total investment necessary to begin operations from a range of $210,000 to $289,000 to a range of $227,000 to $312,000.

> b. An increase in the amounts that must be paid to F45 or its affiliate from a range of $158,000 to $161,000 to a range of $177,200 to $202,200.

> c. A notification that F45's affiliate, Group Training LLC ("Group Training") owns and operates seven Studios through various subsidiaries.

> d. An increase in the fee payable from $2,500 per month to the greater of 7% of Gross Sales or $2,500 per month.

> e. A change from requiring the Franchisee to spend $2,500 per month on local advertising to paying F45 that amount.

> f. A reduction in the number of LionHeart heart rate monitors that would be supplied from 200 to 100 units.

> g. A Balance Sheet for F45 as of January 31, 2019.

h. That a litigation between F45 and its franchisee, Monica Walus and Fit Empire Incorporated, which alleged, *inter alia*, deceptive trade practices and consumer fraud, was settled, in part through by Group Training purchasing the Walus' F45 studio for $231,882.

(ECF No. 1, PageID.26-27).

Moreover, as Functional HIIT correctly argues, promises of future events—such as those allegedly made by Marano and contained in the spreadsheet—are actionable under Delaware law "when the promisor 'had no intention of performing' at the time the promise was made." *Hopkins v. Concorde Career Colleges, Inc.*, No. 15-206-LPS, 2016 WL 1238775, at *2 (D. Del. Mar. 29, 2016) (quoting *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. 3088–VCP, 2008 WL 5352063, at *7 (Del. Ch. Dec. 23, 2008). Here, Functional HIIT argues that it has "plead[ed] that Defendant F45 was in a position to know of the falsity of that statement at the time it was made because Defendant F45's affiliate owned seven studios, making the statements deliberately false and were made with the intent to induce [Functional HIIT] into a franchise relationship with F45." (ECF No. 34, 1111). The undersigned agrees.

In sum, Functional HIIT has adequately pleaded claims for fraud and misrepresentation and negligent misrepresentation. Functional HIIT clearly identifies what information it relied on and what information it now believes to be false. The information was all provided by various F45 executives/employees and/or Marano, giving Functional HIIT reason to justifiably rely on the provided

information.  The various arguments raised by Marano and F45 regarding these claims are best left for consideration at a later stage, whether that be a motion for summary judgment or trial, because they go to the merits of the claims.

### d.    Unjust Enrichment (Count V)

Functional HIIT's fifth claim is for unjust enrichment against F45.  Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).  However, under Delaware law, "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda*, 971 A.2d at 891.  Dismissal of a claim for unjust enrichment is appropriate when a complaint alleges that an express, enforceable contract exists controlling the parties' relationship. *Id*.

Although it appears that contracts exist in this case, Functional HIIT may nonetheless proceed on its unjust enrichment claim because it pleads this claim in the alternative.  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency."); *see also Pedrick v. Roten*, 70 F. Supp. 3d 638, 653 (D. Del. 2014) ("While a 'claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that

gives rise to the unjust enrichment claim,' a plaintiff may plead alternative claims for relief, regardless of consistency.") (quoting *Capitaliza–T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. Nat. Ass'n,* 2011 WL 6650329, at *13 (D.Del. Dec, 21, 2011) (citations omitted), *rev'd in part on reconsideration,* 2012 WL 3150386, at *1 (D.Del. Aug. 2, 2012);.  F45 argues that Functional HIIT cannot maintain a claim for unjust enrichment where it "concedes in its Complaint that the parties' relationship is governed by the Franchise Agreement.  (ECF No. 17, PageID.910).  However, as Functional HIIT notes, F45 has not answered the complaint and admitted the existence of a contract. (ECF No. 34, PageID.1105).  Thus, Functional HIIT's claim for unjust enrichment should proceed at this stage.  *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 612 (E.D. Mich. 2015) ("But Defendants have cited no binding authority dismissing a claim where, as here, plaintiffs pleaded allegedly-inconsistent claims without expressly indicating that the claims are pleaded in the alternative.").

e.    MFIL Claims (Counts VI-VIII)

Functional HIIT's sixth, seventh, and eighth claims are all for violations of the MFIL.  For the reasons discussed above, these three claims should be dismissed because Delaware law, not Michigan law or the MFIL, governs this case.

f.      CFIL Claim (Count IX)

Functional HIIT's ninth claim is for a violation of the CFIL.  Again, as discussed above, this claim should be dismissed because Delaware law governs this case.

g.      Delaware Uniform Deceptive Trade Practices Act Claim (Count X)

Functional HIIT's tenth claim is for a violation of the Delaware Uniform Deceptive Trade Practices Act against F45.  In order to state a claim under this statute, the plaintiff must have a horizontal relationship with the defendant.  *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 648 (D. Del. 2017) (explaining that the statute applies to "two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors") (internal quotation marks and citation omitted).

Functional HIIT has failed to show that a horizontal relationship exists between it and F45.  Functional HIIT argues that the relationship has "characteristics of horizontal relationship," however, it does not allege facts showing that it competed in the same geographic regions as F45.  Although there were allegedly other F45 locations in Michigan, they were not in the same areas as Functional HIIT's franchises.

Moreover, "[a]n entity that grants an exclusive franchise is ordinarily in a vertical, not a horizontal, relationship with the grantee."  *E. Food Services, Inc. v.*

40

*Pontifical Cath. Univ. Services Ass'n, Inc.*, 357 F.3d 1, *5 (1st Cir. 2004).  Nothing in the complaint suggests that a departure from the typical vertical relationship between a franchisor and a franchisee occurred in this case.

Ultimately, the complaint reveals that Functional HIIT and F45 are in a vertical relationship as franchisor and franchisee.  Accordingly, Functional HIIT's claim under the Delaware Uniform Deceptive Trade Practices Act should be dismissed.

## IV.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that the motions to dismiss, (ECF Nos. 17, 18, 20, 48), be GRANTED IN PART and DENIED IN PART.  In particular, the undersigned RECOMMENDS the DISMISSAL of the following Defendants:

- Adam Gilchrist

- Robert Deutsch

- Luke Armstrong

- Nick Abrahams

The undersigned further RECOMMENDS the DISMISSAL of the following claims:

- Breach of the Implied Covenant (Count II)

- MFIL Claims (Counts VI-VIII)

- CFIL Claim (Count IX)

- Delaware Uniform Deceptive Trade Practices Act Claim (Count X)

Should these recommendations be adopted, the case would proceed against F45

and Marc Marano on the following claims:

- Breach of Contract (Count I)

- Fraud and Misrepresentation (Count III)

- Negligent Misrepresentation (Count IV)

- Unjust Enrichment (Count V)

Dated: October 25, 2022          s/Kimberly G. Altman
Detroit, Michigan                KIMBERLY G. ALTMAN
                                 United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2022.

s/Julie Owens
Julie Owens
Case Manager