# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| FUNCTIONAL HIIT FITNESS, LLC ) | Case No. 5:22-cv-10168 |
| ) | Hon. F. Kay Behm |
| *Plaintiff*, ) | Mag. Kimberly G. Altman |
| ) | |
| v. ) | |
| ) | |
| F45 TRAINING INCORPORATED, ) | |
| ADAM GILCHRIST, ROBERT ) | |
| DEUTSCH, MARC MARANO, LUKE ) | |
| ARMSTRONG and ) | |
| NICK ABRAHAMS, ) | |
| ) | |
| *Defendants.* ) | |

### PLAINTIFF'S MOTION TO SUPPLEMENT RECORD IN SUPPORT OF ITS OBJECTION (ECF #55) TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (ECF #52) AND IN OPPOSITION TO DEFENDANTS' OBJECTION TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (ECF #55) AND FOR STATUS CONFERENCE AND BRIEF IN SUPPORT

Plaintiff Functional HIIT Fitness, LLC ("Plaintiff Functional"), through its counsel, moves that this Court enter an Order that permits supplementation of the existing court record with an August 24, 2023, settlement agreement between the Michigan Department of Attorney General ("Michigan Attorney General") and F45 Training, Inc. ("F45") ("Settlement Agreement"). A copy of the Settlement Agreement is attached hereto at Exhibit 1.

The Settlement Agreement is relevant to a key issue in this case, namely,

1

whether the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501, *et seq.*, applies to the three transactions at issue between Plaintiff Functional and F45. The Settlement Agreement reflects the position of the Michigan Attorney General that the MFIL applies to the transactions between F45 and its franchisees in Michigan despite the Delaware choice of law provision in F45's franchise agreements. More critically, F45 agrees in the Settlement Agreement that the MFIL regulates the offer and sale of franchises in Michigan.

Specifically, contrary to its filings with this Court, in the Settlement Agreement with the Michigan Department of Attorney General, F45 agrees in II. Preamble, C that:

> The Parties agree that the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501, et seq., regulates the offer and sale of franchises in Michigan.

As such, the Settlement Agreement should be made part of the record in this matter and considered by the Court in addressing the pending objections to the Magistrate's Report and Recommendation.

The Parties have yet to have any conference with the Court since the case was reassigned from Judge Levy. Plaintiff Functional suggests a status conference may be in order given the pending objections and motions.

Pursuant to LR 7.1, Plaintiff's counsel sought concurrence from opposing counsel in the relief requested in this Motion with respect to the Settlement

2

Agreement. Concurrence was denied.

WHEREFORE, Plaintiff Functional requests that the record in this matter be supplemented to include the Settlement Agreement and the Court consider the impact of the Settlement Agreement in resolving the pending objections to the Report and Recommendation of the Magistrate Judge (ECF #52), allow further briefing on this issue if it deems it necessary, and hold a status conference if the Court deems that a status conference would be useful.

>AUGUST LAW, PLLC
>
>By: _____/s/ Gary K. August_____
>Gary K. August (P48730)
>Attorney for Plaintiff
>29201 Telegraph Road, Suite 510
>Southfield, MI 48034
>(248) 833-6225
>gaugust@august-law.com
>
>RUBERTO, ISRAEL & WEINER, P.C.
>Ari N. Stern (Admitted E.D. Mich.)
>255 State Street, 7th Floor
>Boston, MA 02109
>(617) 570-3545
>ans@riw.com

BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION TO SUPPLEMENT RECORD IN
SUPPORT OF ITS OBJECTION (ECF #55) TO THE REPORT
AND RECOMMENDATION OF THE MAGISTRATE JUDGE (ECF #52) AND IN
OPPOSITION TO DEFENDANTS' OBJECTION TO THE
REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (ECF #54)
AND FOR STATUS CONFERENCE

ISSUES PRESENTED

1. Should the record be supplemented to include the August 24, 2023, Settlement Agreement between the Michigan Attorney General and Defendant F45?

   Plaintiff says:  Yes.

   Defendants say:  No.

CONTROLLING AUTHORITY

LR 7.1

LR 72.1

BACKGROUND

This matter is a franchise dispute between the franchisee Plaintiff and the franchisor Defendant and its officers and employees related to sale of three F45 franchise territories in the State of Michigan. In response to the Complaint in this matter, Defendants filed three separate Motions to Dismiss. Predecessor Judge Judith Levy referred the motions to Magistrate Kimberly G. Altman for a report and recommendation. That Report and Recommendation

4

(ECF # 52) was issued on October 26, 2022. Both Defendants and Plaintiff Functional filed objections to the Report and Recommendation (ECF #s 54 and 55, respectively) along with response briefs and reply briefs (ECF #s 56, 57, 58, and 59). In total, there have been six objections/briefs filed addressing the Report and Recommendation.

On June 13, 2023, without seeking leave of this Court or communicating with opposing counsel in any manner, seeking concurrence or otherwise, Defendants filed Defendants' Notice of Supplemental Authority as to ECF #55 (the "Notice") attaching a recently issued unpublished opinion in the case of *Luxury Concepts, Inc. v. Bateel Int'l*, Case No. 22-10793 (E.D. Mich. May 23, 2023). Defendants' notice also submits approximately 3 pages of further argument based on the *Luxury Concepts* opinion. Plaintiff Functional filed a Motion to Strike ECF #60, Defendant's Notice of Supplemental Authority as to ECF #55 (ECF #61) as the Notice of Supplemental Authority was filed without leave of the Court and with no procedure for Plaintiff Functional to file a response. Plaintiff's Motion (ECF #61) remains pending.

Subsequently on August 24, 2023, F45 and the Michigan Attorney General entered into the Settlement Agreement Between the Michigan Department of Attorney General and F45 Training, Inc. attached as Exhibit 1 ("Settlement Agreement"). The Settlement Agreement addresses the very

5

issues pending before the Court in the objections to the Report and Recommendation of the Magistrate (ECF ##54, 55), namely the applicability of the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501, et seq., to the three transactions at issue.  The Settlement Agreement removes any doubt that the MFIL is a fundamental policy of the State of Michigan and that F45 is bound to follow its provisions despite F45's Delaware choice of law provision it imposes on franchisees. In fact, F45 explicitly agrees that the MFIL regulates the offer and sale of franchises in Michigan.

## ARGUMENT

I. THE SETTLEMENT AGREEMENT OCCURRED AFTER THE MAGISTRATE ISSUED HER REPORT AND RECOMMENDATION AND AFTER THE OBJECTIONS FILED BY THE PARTIES, AND IT IS DISPOSITIVE OF THE APPLICABILITY OF THE MFIL TO THE TRANSACTIONS IN THIS CASE.

The Settlement Agreement between the Michigan Attorney General and F45 was entered into on August 24, 2023, well after the Magistrate's Report and Recommendation and the parties' objections.  The Settlement Agreement addresses the applicability of the MFIL, and particularly sections 5 and 8 of the MFIL, to F45's offering of franchises in Michigan.  According to the Settlement Agreement, II Preamble B and C F45 agreed:

> B. The Michigan Department of Attorney General Corporate Oversight Division opened an investigation into [sic] after receiving complaints that F45 had violated section 5 and 8 of the

>Michigan Franchise Investment Law. This conduct is referred to below as the "Covered Conduct."
>
>C. <u>The Parties agree that the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501, et seq., regulates the offer and sale of franchises in Michigan</u>. Exhibit 1 (emphasis added).

Rather than take the complaints of the Michigan Attorney General to a formal hearing, F45 agreed to "make a rescission offer pursuant to MCL 445.1531 to Michigan franchisees for franchises the franchisee purchased directly from F45 on or after May 8, 2019." Exhibit 1, ¶2. Further, "F45 agrees to comply with the provisions of the MFIL in any future franchising activities in Michigan." Exhibit 1, ¶7.

Plaintiff Functional and F45 remain in a franchise/franchisor relationship within the State of Michigan. F45's activities going forward in the State of Michigan include its relationship with Plaintiff Functional, including this Lawsuit. This Settlement Agreement evidences that F45 agreed with the State of Michigan that it would abide by MFIL going forward, yet it is maintaining in this very proceeding that it is not obligated to comply with the MFIL. This is improper and potentially sanctionable if F45 continues to maintain its position in this proceeding considering the Settlement Agreement.

7

Moreover, the Settlement Agreement is an admission by both the Michigan Attorney General and F45 in Preamble C that the MFIL regulates the offer and sale of franchises in Michigan which is diametrically opposed to the position taken by F45 in this proceeding. At issue in both the Settlement Agreement and in this matter is F45's blatant disregard of the provisions of Sections 5 and 8 of the MFIL. This Court should not sanction F45's duplicitous conduct in stipulating with the Michigan Attorney General that the MFIL regulates the offer and sale of franchises in Michigan while simultaneously arguing that Sections 5 and 8 of the MFIL (along with its other provisions) do not apply in this case. Thus, the Settlement Agreement should be put into the record in this matter and considered by the Court in addressing the objections to the Magistrate's Report and Recommendation.

II. THE COURT SHOULD REJECT F45's ATTEMPTS TO KEEP THIS SETTLEMENT AGREEMENT HIDDEN FROM THE COURT.

F45 entered into the Settlement Agreement knowing that not only was this lawsuit pending, but that the very issue of the applicability of the MFIL in this case was the key issue in these proceedings. In an effort to conceal this Settlement Agreement from this Court it included the following language in the Settlement Agreement:

> 5. Nothing in this Agreement shall be admissible in or construed to affect any of F45's rights, claims, or defenses in any

8

civil litigation that has arisen or may arise between F45 and any of its Michigan based franchisees.

6. Nothing in this Agreement shall be construed to affect a Michigan franchisee's rights, claims, or defenses in any civil litigation that has arisen or may arise between F45 and the franchisee. Exhibit 1.

While this is an admirable attempt on the part of F45 to eliminate the explosive and dispositive impact the Settlement Agreement has in this case, two entities (the Michigan Attorney General and F45) cannot agree amongst themselves what a non-party to the Settlement Agreement (Plaintiff Functional) can or cannot use in Court. Moreover, these two entities (which only one is a party to this proceeding) <u>cannot tell a federal court judge what is or is not admissible in a case pending in her court</u>. Simply put, F45 cannot enter an agreement with a non-party that alters the evidence Plaintiff Functional can seek to submit or what a judge allows into evidence.

III. THIS SETTLEMENT AGREEMENT IMPACTS THE INDIVIDUAL PARTIES TO THIS CASE, NOT JUST F45.

In this proceeding Plaintiff Functional argues that Sections 32 and 39 of the MFIL; MCL 445.1532 and 445.1539 provide a mechanism for both personal jurisdiction and personal liability of the individual defendants in this matter. The Settlement Agreement in paragraph 4 recognized the potential, personal liability of the individual employees, officers, and directors under

9

MCL 445.1532, and F45 made sure to include a release broad enough to include this personal liability dating back prior to the Effective Date of the Settlement Agreement. Exhibit 1, ¶4. It is incongruitous for the individual parties to this case to claim lack of personal jurisdiction when their rights and liabilities are being impacted by a Settlement Agreement with the <u>Michigan Attorney General</u>.

    This issue of personal liability under the MFIL is of significant importance to this case. When oral argument was held on these dispositive motions in front of the Magistrate, counsel for Plaintiff Functional called to the Magistrate's attention the deteriorating financial condition of F45. Since that time, it has only gotten worse. And to be clear, F45's problems are caused specifically by its rampant and blatant violations of MFIL Sections 5 and 8.

    F45's violations of MFIL Sections 5 and 8 are so rampant that the Settlement Agreement covers thirty (30) F45 franchise locations in Michigan, one franchisee not included in the Settlement Agreement backed by a $7 billion fund abruptly announced that it is closing all Michigan locations as of September 8, 2023. F45's stock price has fallen 99.8% to 2.5 <u>cents</u> a share (from a high of $17.28 per share). F45 is being delisted from the New York Stock Exchange for failure to produce financial statements for the last three fiscal quarters, and F45 is facing a securities class action lawsuit. Plainly, F45

is a company running wild violating Sections 5 and 8 of the MFIL and has caused catastrophic consequences for franchisees across the United States and Michigan, including for Plaintiff Functional.

F45's bankruptcy appears to be imminent. Thus, it is imperative that the MFIL's protections of franchisees be recognized by this Court by allowing personal liability against the CEOs and people acting on their behalf at the time of these transactions as required by MCL 445.1532. Hundreds of millions of dollars were taken out of F45 by these individuals as a result of their systematic fraud as seen in this case, and the franchisees are left holding the bag. Plaintiff Functional is asking this Court to supplement the record to expose F45's duplicitous conduct and not let it and its individual employees liquidate their exposure and liability to the Michigan Attorney General under the MFIL while at the same time arguing the MFIL does not apply in this proceeding.

CONCLUSION

Plaintiff Functional respectfully requests that the Court not allow F45 to dictate what documents this Court can or cannot admit into evidence and allow the supplementation of the record to include the Settlement Agreement, allow for any further briefing the Court deems necessary, and hold a status

conference if the Court deems that such a conference would be helpful to the administration of this matter.

> AUGUST LAW, PLLC
>
> By: _____/s/ Gary K. August_____
> Gary K. August (P48730)
> Attorney for Plaintiff
> 29201 Telegraph Road, Suite 510
> Southfield, MI 48034
> (248) 833-6225
> gaugust@august-law.com
>
> RUBERTO, ISRAEL & WEINER, P.C.
> Ari N. Stern (Admitted E.D. Mich.)
> 255 State Street, 7th Floor
> Boston, MA 02109
> (617) 570-3545
> ans@riw.com

Dated: September 8, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I served the foregoing document on all counsel of record through the Court's electronic filing system.

> _____/s/ Gary K. August_____
> GARY K. AUGUST

# EXHIBIT 1

# SETTLEMENT AGREEMENT BETWEEN THE MICHIGAN DEPARTMENT OF ATTORNEY GENERAL AND F45 TRAINING, INC.

I. **PARTIES**

This Settlement Agreement ("Agreement") is entered into between the Michigan Department of Attorney General ("DAG") and F45 Training, Inc. ("F45") through their authorized representatives, hereafter collectively referred to as the "Parties."

II. **PREAMBLE**

As a preamble to this Agreement, the Parties agree to the following:

A. F45 is a franchisor of fitness studios. Over 750 F45 studios are presently operating in the United States and over 30 F45 studios are presently operating in Michigan.

B. The Michigan Department of Attorney General Corporate Oversight Division opened an investigation into after receiving complaints alleging that F45 had violated section 5 and 8 of the Michigan Franchise Investment Law. This conduct is referred to below as the "Covered Conduct."

C. The Parties agree that the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501, et seq., regulates the offer and sale of franchises in Michigan.

D. This Agreement is neither an admission of liability on the part of F45 nor a concession by DAG that its claims are not well-founded.

III. **TERMS AND CONDITIONS**

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants and obligations set forth in this Agreement, and for good and valuable consideration as stated herein, the Parties agree as follows:

1. F45 agrees to pay DAG the sum of $95,000 which DAG will use to compensate F45 franchisees at its sole discretion. Such payment shall be made within 30 days of the execution of this Agreement by both Parties, according to payment instructions to be provided by DAG.

2. In accordance with a list agreed to by the Parties, F45 agrees to make a rescission offer pursuant to MCL 445.1531 to Michigan franchisees for franchises the franchisee purchased directly from F45 on or after May 8, 2019. Franchisees who have purchased a franchise from another franchisee, or who purchased their franchise before May 8, 2019, are not entitled to a rescission offer. Further, F45 is not required

by this Agreement to make a rescission offer to one franchisee who has already reached an agreement with F45, and any rescission offer as to a franchise for which the franchisee has brought civil litigation may be conditioned on dismissal of the civil claims as to that franchise.

3. F45 will refund the $2,500 deposit paid by one prospective franchisee who did not open an F45 studio.

4. Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, and conditioned upon full satisfaction of the terms of this Agreement, DAG hereby releases F45, its shareholders, officers, directors, and employees, and any person included within the scope of MCL 445.1532, from any claim arising from or related to the Covered Conduct during the period up to and including the Effective Date of this Agreement.

5. Nothing in this Agreement shall be admissible in or construed to affect any of F45's rights, claims, or defenses in any civil litigation that has arisen or may arise between F45 and any of its Michigan based franchisees.

6. Nothing in this Agreement shall be construed to affect a Michigan franchisee's rights, claims, or defenses in any civil litigation that has arisen or may arise between F45 and the franchisee.

7. F45 agrees to comply with the provisions of the MFIL in any future franchising activities in Michigan.

8. F45 hereby releases DAG, its agencies, offices, departments, employees, servants, agents, and political subdivisions from any claims (including, but not limited to, attorneys' fees, costs, and expenses of every kind and however denominated) that F45 asserted, could have asserted, or may assert in the future against DAG, or its agencies, offices, departments, employees, servants, agents, and political subdivisions related to the DAG investigation of the Covered Conduct.

9. The Parties agree to cooperate with each other in good faith to implement and comply with the terms of this Agreement. F45 shall provide DAG with any reasonable assistance and access to information as may be required to verify compliance with this Agreement.

10. Notwithstanding any term of this Agreement, DAG specifically does not release any person or entity from, or renounce any action or remedy for, any of the following claims or liabilities:

      a.      Any civil, criminal, or administrative liability arising under Michigan's tax law.

      b.      Any criminal liability.

      c.      Any liability to DAG for any conduct other than the Covered Conduct.

      d.      Any liability for breach of this Agreement or fraud in its inducement.

DAG represents that its Corporate Oversight Division is not presently investigating F45 for any alleged acts or omissions other than the Covered Conduct.

11.    This Agreement will have no force and effect until the date that all required signatories have signed this Agreement (the "Effective Date"). Facsimiles and other images of signatures, including electronically transmitted signatures, shall constitute acceptable, binding signatures for purposes of this Agreement.

12.    All notices required by or relating to this Agreement shall be sent by first class mail to the following physical addresses and by e-mail to the following email addresses or such other addresses as may be designated in writing by the party to receive the notice:

      a.      F45 Training:

            Michael Sturm
            Lathrop GPM LLP
            600 New Hampshire Ave NW, The Watergate, Suite 700
            Washington, D.C.  20037
            michael.sturm@lathropgpm.com

      b.      To DAG:

            Jonathan Comish
            Assistant Attorney General
            Corporate Oversight Division
            525 W. Ottawa Street
            P.O. Box 30736
            Lansing, MI 48909
            comishj@michigan.gov

13. Except as otherwise stated in this Agreement, this Agreement is intended to be for the benefit of the Parties only, and by this instrument the Parties do not release any liability against any other person or entity. No person other than a Party to this Agreement may enforce this Agreement or obtain relief thereunder in any forum, as an alleged third-party beneficiary or otherwise.

14. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the State of Michigan.

17. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the Ingham County Circuit Court for the State of Michigan.

18. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

*Remainder of Page Blank – Signature Page Follows*

**MICHIGAN DEPARTMENT OF ATTORNEY GENERAL**

By: _____  Dated: <u>August 24</u>, 2023

**F45 TRAINING, INC.**

By: _____  Dated: August 23, 2023

5