UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FUNCTIONAL HIIT FITNESS, LLC,

      Plaintiff,

v.

F45 TRAINING INCORPORATED,
ADAM GILCHRIST, ROBERT DEUTSCH,
MARC MARANO, LUKE ARMSTRONG,
and NICK ABRAHAMS,

      Defendants.

_____ /

Case No. 22-10168

F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE (ECF No. 61),
DENYING PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD (ECF No. 63),
MODIFYING THE REPORT AND RECOMMENDATION AS TO COUNTS V, VI, VII,
and VIII, and GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 17, 18, 20, 48)**

Plaintiff Functional HIIT Fitness filed this case against Defendants F45

Training, Inc. ("F45"), Adam Gilchrist ("Gilchrist"), Robert Deutsch ("Deutsch"),[1]

Marc Marano ("Marano"), Luke Armstrong ("Armstrong"), and Nick Abrahams

("Abrahams") on January 26, 2022.  (ECF No. 1).  Plaintiff's complaint alleges that

---

[1] Plaintiff requested a clerk's entry of default as to Defendant Deutsch on April 6, 2022 for "failure to plead or otherwise defend in accordance with Fed. R. Civ. P. 12."  (ECF No. 25, PageID.1009).  The court entered a default on April 7, 2022.  (ECF No. 26).  The same day, Defendant Deutsch entered a notice of appearance and statement of intent to defend, (ECF No. 27), and filed a motion to set aside the clerk's entry of default, (ECF No. 28).  The parties filed a stipulated order setting aside the clerk's entry of default on May 23, 2022.  (ECF No. 41).

Defendants violated the Federal Trade Commission's (FTC) Franchise rule, as well as various other state laws, by fraudulently inducing Plaintiff to enter franchise agreements for three F45 Training studios. *Id.*, PageID.2.  Specifically, Plaintiff's complaint raises 10 claims: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); fraud and misrepresentation (Count III); negligent misrepresentation (Count IV); unjust enrichment (Count V); violations of the Michigan Franchise Investment Law (MFIL) (Counts VI-VIII); violations of the California Franchise Investment Law (CFIL) (Count IX); and violations of the Delaware Deceptive Trade Practices Act (Count X).  *Id.*, PageID.39-50.

On March 21, 2022, in lieu of filing an answer to the complaint, Defendant F45 and Defendants Armstrong and Gilchrist filed motions to dismiss.  (ECF Nos. 17, 18).[2]  On March 25, 2022, in lieu of filing an answer to the complaint, Defendants Abrahams and Marano also filed a motion to dismiss.  (ECF No. 20).  On June 13, 2022, in lieu of filing an answer to the complaint, Defendant Deutsch also filed a motion to dismiss.  (ECF No. 48).  All pretrial matters, including these three motions, were referred by District Judge Judith E. Levy to Magistrate Judge

---

[2] Defendants initially filed motions to dismiss, ECF Nos. 15 and 16.  However, later that same day they filed amended motions to dismiss, ECF Nos. 17 and 18.

Kimberly G. Altman on March 28, 2022.[3]  (ECF No. 21).  The matters have since

been fully briefed, (ECF Nos. 34, 35, 38, 44, 45, 46, 50, 51), and a hearing was held

in front of Judge Altman on August 9, 2022 (*See* ECF No. 47).

On October 26, 2022, Judge Altman issued a Report and Recommendation

(R&R).  (ECF No. 52).  Judge Altman's R&R recommends that the motions to

dismiss be granted in part and denied in part, including the dismissal of

Defendants Gilchrist, Deutsch, Armstrong, and Adams, and the dismissal of

Counts II, VI-VII, IX, and X.  *Id.*, PageID.1628-29.  Plaintiff and Defendants F45 and

Marano filed their objections to the R&R on November 9, 2022.  (ECF Nos. 54, 55).

The court has now considered Judge Altman's R&R, as well as all of the parties'

objections and further briefing.  For the reasons stated below, the court

**MODIFIES** the R&R as to Counts V, VI, VII, and VIII.

I.    **INITIAL MATTERS**

Before analyzing the substance of Judge Altman's R&R, the court must

determine whether it will consider the supplemental information provided by

both parties since its filing.  On June 13, 2023, Defendants filed a notice of

supplemental authority "to alert the Court to a recent decision in this Court that

---

[3] This case was initially before Judge Levy, but was reassigned to the undersigned on February 6, 2023.

has a direct bearing on Plaintiff's Objections" to the currently pending R&R.  (ECF No. 60, PageID.1914).  Defendants attached a copy of District Judge Denise Page Hood's order in *Luxury Concepts, Inc. v. Bateel International, LLC.*, No. 22-10793, 2023 WL 3606649 (E.D. Mich. 2023).  On June 29, 2023, Plaintiff filed a motion to strike this filing as an improper sur-reply under the local rules.  (ECF No. 61).  On September 8, 2023, Plaintiff filed a motion to supplement the record with an August 24, 2023, settlement agreement between the Michigan Department of Attorney General and F45 Training.  (ECF No. 63, PageID.1954).  Plaintiff argues this agreement is "relevant to a key issue in this case, namely, whether the MFIL applies to the transactions between F45 and its franchisees in Michigan despite the Delaware choice of law provision in F45's franchise agreements."  *Id.*, PageID.1955.  Defendants filed a response on September 18, 2023, urging the court to deny Plaintiff's motion.  (ECF No. 64).

District courts generally have "broad discretion" to manage their docket, including to allow supplemental briefing.  *See Jomaa v. United States*, 940 F.3d 439, 451 (6th Cir. 2010) (holding that the court's denial of plaintiff's motion for supplemental briefing was an appropriate exercise of the court's discretion); *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 451 (6th Cir. 2010).  The court has examined the exhibits submitted by both parties.  The case submitted

by Defendants on June 13, 2023, is not binding on this court.  *See Camreta v.*

*Greene*, 563 U.S. 692, 730 n.7 (2011) ("A decision of a federal district court judge

is not binding precedent in…the same judicial district.").  However, because it

discusses issues similar to those raised in the R&R and relevant objections, it may

be persuasive to the court in making a decision.  *See Smith v. Astrue*, 639 F. Supp.

2d 836, 841 (W.D. Mich. 2009) ("like judges throughout the Sixth Circuit, this

court regularly discusses nonprecedential decisions when they can illuminate an

issue.").  As such, the court will allow it to be filed as supplemental authority and

Plaintiff's motion to strike (ECF No. 61) is **DENIED.**

The settlement agreement submitted by Plaintiff on September 8, 2023,

also addresses issues similar to those raised in the R&R and relevant objections.

However, the settlement agreement explicitly states: "[n]othing in this agreement

shall be admissible in or construed to affect any of F45's rights, claims, or

defenses in any civil litigation that has arisen or may arise between F45 and any of

its Michigan based franchisees."  (ECF No. 63, PageID.1986).  Given this language,

not only is the settlement agreement not binding on this court, it cannot be

considered to affect any of the claims made by Plaintiff or Defendant.  As such,

Plaintiff's motion (ECF No. 63) is **DENIED,** and the court will not consider the

settlement agreement in this case.

## II.   FACTUAL BACKGROUND

Judge Altman's R&R sets out the pertinent facts at issue in this matter as

stated in the complaint and relevant exhibits:

> F45 operates training studios "which provide[] exercise training that
> involves alternating periods of short, intense anaerobic exercise."
> (ECF No. 1-1, PageID.53). F45 also offers individuals the opportunity
> to franchise a training studio. *See id*. This case concerns three
> Michigan training studios, located in North Livonia,
> Northville/Plymouth, and Novi, that were established and operated
> by Functional HIIT. *See* ECF No. 1. The governing franchise
> agreements were entered into on April 26, 2019 (later amended on
> August 1, 2019), April 26, 2019 (later amended on September 24,
> 2019), and September 30, 2019. *See* ECF Nos. 1-6, 1-7, 1-8, 1-9, 1-13.
> Donald Jordan (Jordan), the principal of Functional HIIT, signed the
> agreements. *See* ECF No. 1, PageID.1-2.
>
> Many of Functional HIIT's claims surround the various Franchise
> Disclosure Documents created by F45. *See id*., PageID.2-3. The April
> 19, 2018 Franchise Disclosure Document explains that it
>
> > summarizes certain provisions of your Franchise
> > Agreement and any other information in plain English.
> > Read this disclosure document and all accompanying
> > agreements carefully. You must receive this disclosure
> > document at least 14 calendar days before you sign a
> > binding agreement with, or make any payment to, the
> > franchisor or an affiliate in connection with the
> > proposed franchise sale. Note, however, that **no
> > governmental agency has verified the information
> > contained in this document.**
>
> (ECF No. 1-1, PageID.53) (emphasis in original). Functional HIIT,
> however, alleges that it received and relied on an outdated Franchise
> Disclosure Document when entering into the first two agreements

and that it did not receive any Franchise Disclosure Document before entering into the third agreement. (ECF No. 1, PageID.2-3). Functional HIIT states that all of the named individual defendants—Gilchrist, Deutsch, Marano, Armstrong, and Abrahams—helped create and/or issue the various Franchise Disclosure Documents. (*Id.*, PageID.22).

Jordan first reached out to F45 in March of 2019. (*Id.*, PageID.21). He was then put in touch with Marano, F45's President of U.S. Expansion. (*Id.*). During this period, Jordan received the April 19, 2018 Franchise Disclosure Document. (*Id.*). However, Jordan later discovered that the April 19, 2018 Franchise Disclosure Document had already been superseded by the September 11, 2018 Franchise Disclosure Document. (*Id.*). Jordan has never received the September 11, 2018 Franchise Disclosure Document. (*Id.*).

Additionally, on March 17, 2019, Marano emailed Jordan a "link to a spreadsheet for a financial model which showed a franchise studio reaching breakeven on case flow of just over four (4) months and a payback period of eighteen (18) months with an internal rate of return (IRR) of around 66%." (*Id.*, PageID.23). Marano did so even though Federal Trade Commission (FTC) rules prohibit franchisors from providing financial performance information outside of a Franchise Disclosure Document. (*Id.*, PageID.22-23). Functional HIIT now alleges that the spreadsheet's "financial performance representations are, and were at the time they were made, false, inaccurate, incomplete, unfair, deceptive, and/or misleading, and were made to induce [Functional HIIT] into a franchise relationship." (*Id.*, PageID.23).

Marano continued to make "a number of financial performance representations" to Jordan during telephone conversations held throughout March and April of 2019, that "were false, inaccurate, incomplete, unfair, deceptive, and/or misleading, and were willingly made for the purpose of inducing [Functional HIIT] into a franchise relationship with F45." (*Id.*, PageID.24-25). For example, Marano told Jordan that if he "followed the F45 program, his studios would break

even in three months and reach an [earnings before interest, taxes, depreciation, and amortization] of 33% by the end of year one." (*Id.*, PageID.25).

Then, F45 issued the April 18, 2019 Franchise Disclosure Document containing a number of changes from the April 19, 2018 Franchise Disclosure Document that Jordan had previously received. (*Id.*, PageID.26-27). Marano emailed Jordan about the updated Franchise Disclosure Document on April 23, 2019, warning Jordan that the new Franchise Disclosure Document would come into effect on May 1, 2019. (*Id.*, PageID.27-28). Marano stated that "the largest change is the franchise royalty fee is (sic) moving from $2500 per month to $2500 or 7.5% of the monthly turnover which ever is the greater." (*Id.*, PageID.28) (emphasis in original). Three days later, on April 26, 2019, Functional HIIT entered into the first two franchise agreements. (*Id.*).

Later, on July 22, 2019, Armstrong sent Jordan two identical emails inviting Jordan to click on a link to access either the same or a similar spreadsheet previously sent to Jordan by Marano. (*Id.*, PageID.30). The spreadsheet represented "that for a total investment of €194,500 (which based upon mid-market exchange rates for July 22, 2019 would amount to $217,601 – and which amount would probably not even cover the leasehold improvements for a franchise), there would be a cash flow break even at just over four (4) months, and a payback period on investment of eighteen (18) months, which is an IRR of about 66%." (*Id.*). Functional HIIT alleges that the spreadsheet's "financial performance representations are false, inaccurate, incomplete, unfair, deceptive, and/or misleading, and were knowingly and intentionally made to induce [Functional HIIT] into a franchise relationship with F45." (*Id.*, PageID.31). Functional HIIT entered into the third franchise agreement on September 30, 2019. (*Id.*, PageID.31-32). Functional HIIT believes that the third franchise agreement is based on the April 18, 2019 Franchise Disclosure Document, which Jordan did not receive before entering into the third franchise agreement. (*Id.*, PageID.32).

In addition to the issues related to the Franchise Disclosure Documents, Functional HIIT also alleges breach of contract. (*Id.*, PageID.3). For example, Functional HIIT says that F45 "charg[ed] fees and costs that [were] not set forth or otherwise memorialized/reserved in the applicable Franchise Agreement." (*Id.*). In particular, Item 7 of the April 19, 2018 Franchise Disclosure Document lists the costs of "Leasehold Improvements" as being between $1,000 and $10,000. (*Id.*, PageID.34). However, Functional HIIT spent around $187,000 to make leasehold improvements at its North Livonia studio. (*Id.*, PageID.35). This amount is comparable to the amount spent on leasehold improvements at other Michigan F45 franchise locations. (*Id.*, PageID.35-36). Functional HIIT also alleges that it was overcharged by F45 for heartrate monitors, and that F45 failed to disclose the cost of music licensing fees. (*Id.*, PageID.36-38).

### III.   STANDARD OF REVIEW

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a *de novo* standard of review.  28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3).  This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id*.  "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'"  *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018).  Objections that

dispute the general correctness of the report and recommendation are improper. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id*. (citing *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505, 509 (6th Cir. 1991))*; see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346. And, when objections are "merely perfunctory responses ... rehashing ... the same arguments set forth in the original petition, reviewing courts should review [a Report and Recommendation] for clear error." *Ramirez v. United States*, 898 F.Supp.2d 659, 663 (S.D.N.Y. 2012); *see also Funderburg v. Comm'r of Soc. Sec*., No. 15-10068, 2016 WL 1104466, at *1 (E.D. Mich. Mar. 22, 2016) (Hood, J.) (noting that the plaintiff's objections merely restated his summary judgment arguments, "an approach that is not appropriate or sufficient").

## IV.    APPLICABLE LAW

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal of a case for lack of personal jurisdiction.  When considering a motion under Rule 12(b)(2), the court may: (1) decide the motion upon the affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).  Regardless of which method the court chooses, the plaintiff bears the burden of establishing that the court can exercise personal jurisdiction over the defendant.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  The weight of this burden, however, depends on whether the court decides to rule on the parties' written submissions alone or to hear evidence.  *Id.*  Where, as here, the court decides a motion without an evidentiary hearing, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.  *Anwar v. Dow Chem. Co.*, 867 F.3d 841, 847 (6th Cir. 2017).  This burden is considered to be "relatively slight."  *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 116 (6th Cir. 1988)).  The pleadings and affidavits must be viewed in the light most

favorable to the plaintiff, and the court should not weigh any contrary assertions offered by the defendant. *AlixPartners, LLP v. Brewington,* 133 F. Supp. 3d 947, 954 (E.D. Mich. 2015) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005)).

    B.  Rule 12(b)(6)

    In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must also "construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

    A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when

an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215

(2007) (quotation marks omitted).  A claim has "facial plausibility" when the

nonmoving party pleads facts that "allow[] the court to draw the reasonable

inference that the [moving party] is liable for the misconduct alleged."  *Id*. at 678.

However, a claim does not have "facial plausibility" when the "well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct."

*Id*. at 679.  The factual allegations "must do more than create speculation or

suspicion of a legally cognizable cause of action; they must show entitlement to

relief."  *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing

entitlement to relief "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire

Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*,

550 U.S. at 555).

   In evaluating the allegations in the Complaint, the court must be mindful of

its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At

the motion to dismiss stage, the court does not consider whether the factual

allegations are probably true; instead a court must accept the factual allegations

as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed

"on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)"); *id*. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

## V.    OBJECTIONS TO THE R&R

Both Plaintiff and Defendants F45 and Marano ("Defendants") have filed numerous objections asking the court to reconsider almost the entirety of the R&R.  After a thorough *de novo* review of the relevant issues and applicable law, the court **MODIFIES** the R&R's findings as to Counts V, VI, VII, and VIII.  In its analysis, the court will first determine which Defendants may be included in this matter and which law applies, before analyzing whether Plaintiff's claims survive Defendants' motions to dismiss.

A.  Personal Jurisdiction

The R&R concludes that Defendants Armstrong, Gilchrist, Abrahams, and Deutsch must be dismissed from this case because personal jurisdiction over them is lacking.[4]  (ECF No. 52, PageID.1636).  It is undisputed that these individuals do not currently live in Michigan, rather Defendant Armstrong is a citizen of the Commonwealth of Australia and a resident of Texas, Defendant Gilchrist is a citizen of the Commonwealth of Australia and a resident of Texas, Defendant Abrahams is a citizen of the Commonwealth of Australia and a resident of California, and Defendant Deutsch is both a citizen and a resident of the Commonwealth of Australia.  (ECF No. 1, PageID.6-7).

Federal courts may exercise personal jurisdiction in a diversity case if such jurisdiction is authorized by the law of the state in which the court sits and is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *Neogen Corp.*, 282 F.3d at 888.  Michigan's long-arm statute provides for "limited" jurisdiction over individuals, pursuant to Mich. Comp. Laws § 600.705, arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

---

[4] The R&R concludes that, given Defendant Marano's extensive contacts with Jordan throughout the process of opening his franchise locations, Plaintiff has sufficiently alleged purposeful availment and can exercise personal jurisdiction.  (ECF No. 52, PageID.1647).  The court agrees with this conclusion.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705.

The Michigan Supreme Court has construed Michigan's limited jurisdiction statute to "extend[] the state's jurisdiction to the farthest limits permitted by due process." *Sifers v. Horen*, 188 N.W.2d 623, 623-24 (Mich. 1971). The Sixth Circuit has held that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). Traditionally, the Due Process Clause requires a defendant to have sufficient "minimum contacts" with the forum state such that "it is fair to subject

them to jurisdiction." *Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012) (citing

*Burger King Corp v. Rudzewicz,* 471 U.S. 462, 475 (1985)).  The Sixth Circuit has

established a three-part test, often referred to as the "*Southern Machine* test" to

determine whether specific jurisdiction exists over a nonresident defendant:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair.

*Neogen Corp.*, 282 F.3d at 890 (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401

F.2d 374, 381 (6th Cir. 1968)).  While this test creates a framework for courts to

evaluate personal jurisdiction claims, it must not be applied formulaically, and

"'the facts of each case must [always] be weighed' in determining whether

personal jurisdiction would comport with 'fair play and substantial justice.'"

*Burger King Corp.*, 471 U.S. at 486 (citing *Kulko v. California Superior Court,* 436

U.S. 84, 92 (1978)).

   If a plaintiff is relying on Mich. Comp. Laws § 600.705(6) to argue that a

court has personal jurisdiction, they must demonstrate more than simply that the

individual was an officer of the relevant corporation.  *See SFS Check, LLC v. First

Bank of Delaware*, 990 F. Supp. 2d 762, 771 (E.D. Mich. 2013), *aff'd* 774 F.3d 351

(6th Cir. 2014) ("The fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation.") (citations omitted); *Luxury Concepts, Inc,* 2023 WL 3606649, at *5 ("Plaintiff has not alleged that the individual Defendants engaged in any activities other than in their capacities as directors of Bateel, which is not enough for personal jurisdiction to attach."). Ultimately, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposefully availed herself of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000); (ECF No. 52, PageID.1639). Likewise, for each of the individual Defendants, Plaintiff cannot rely solely on their role as executive officers of F45 to establish personal jurisdiction, but must bring evidence of their specific actions giving rise to Plaintiff's claims that meet the standard for purposeful availment.

     i.     *Plaintiff's Objection No. 6*

Plaintiff's sixth objection argues the R&R utilized the wrong standard for determining personal jurisdiction over the individual Defendants. (ECF No. 55, PageID.1789). Specifically, Plaintiff argues that the R&R failed to cite the "lesser

standard," which requires a plaintiff to "make a prima facie showing of jurisdiction" and requires the pleadings and affidavits to be considered "in the light most favorable to the Plaintiff." *Id.* (citing *Bird v. Parsons*, 299 F.3d 865, 871 (6th Cir. 2002); *Welsh v. Gibbs*, 631 F.2d 43, 438-39 (6th Cir. 1980)).

The language Plaintiff claims was "not cited by the Report and Recommendation" is, in fact, cited on page eight:

> Where the court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The Court does "not weigh the facts disputed by the parties but instead consider[s] the pleadings in the light most favorable to the plaintiff." *Id.*

(ECF No. 52, PageID.1634).

Additionally, in analyzing whether the court has personal jurisdiction over each of the individual Defendants, the R&R correctly applies this standard. While the R&R may not use the exact words "relatively slight" to describe the Plaintiff's burden, it does not analyze Plaintiff's claims under a heightened standard. As will be discussed in further detail below, the R&R correctly concludes that Plaintiff's allegations were insufficient to establish personal jurisdiction over Defendants Armstrong, Gilchrist, Abrahams, and Deutsch. As such, Plaintiff's sixth objection is **OVERRULED.**

ii.   *Plaintiff's Objection No. 7*

Plaintiff's seventh objection argues that the R&R failed to apply MFIL

sections 32 and 39 (Mich. Comp. Laws §§ 445.1532, 445.1539) as a mechanism to

find personal jurisdiction over each of the individual defendants.  (ECF No. 55,

PageID.1790).  MFIL § 32 creates a scheme of joint and several liability for

corporations and their employees "who materially aid[] in the act or transaction

constituting the violation."  Mich. Comp. Laws § 445.1532.  MFIL § 39, according

to Plaintiff, "provides for a mechanism of service of process for these individuals

and personal jurisdiction 'when personal jurisdiction cannot otherwise be

obtained' in Michigan by serving the State of Michigan's Corporations and

Securities Bureau of the Department of Commerce."  (ECF No. 55, PageID.1791)

(citing Mich. Comp. Laws § 445.1539).  However, neither of these sections create

an independent mechanism to confer personal jurisdiction over a defendant.

Michigan's long-arm statute allows Michigan courts to exercise jurisdiction

to the full extent allowed by the federal due process requirements.  *Michigan*

*Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th

Cir. 1992).  Likewise, even if section 39 of the MFIL grants "personal jurisdiction"

by creating a mechanism for service of process when an individual does not reside

in Michigan, a plaintiff still must show that the exercise of personal jurisdiction

complies with due process. *Luxury Concepts, Inc.*, 2023 WL 3606649, at *4 ("MFIL does not in itself create personal jurisdiction.").  Because, as discussed below, Plaintiff cannot meet their slight burden to show purposeful availment consistent with due process, the court cannot exercise personal jurisdiction over Defendants Armstrong, Gilchrist, Abrahams, or Deutsch.  Plaintiff's seventh objection is **OVERRULED.**

### iii.   Personal Jurisdiction: Defendant Armstrong

Plaintiff's complaint bases personal jurisdiction over Defendant Armstrong on two emails sent to Jordan, which allegedly contain false financial representations.  (ECF No. 52, PageID.1640).  The R&R, however, notes that the emails appear to be "form emails which were sent after Jordan contacted F45 to express interest in franchise opportunities," and concludes that "the quality of these emails, along with the fact that Jordan was the initiating party do not establish personal availment."  *Id.* at 1640-41.  Plaintiff's ninth objection argues that the R&R incorrectly downplays the impact of Defendant Armstrong's emails, stating they were "not one-off emails to Plaintiff, they were part of multiple emails, videos, spreadsheets and financial performance representations that Armstrong sent to franchisees in Michigan including locations in Macomb,

Rochester, Detroit, Lansing, Shelby and West Bloomfield, Michigan." (ECF No. 55, PageID.1794).

First, the court notes that it cannot consider Defendant Armstrong's actions involving other studios in Michigan, and must rely solely on the two emails to Jordan discussing the North Livonia, Northville/Plymouth, or Novi franchise locations. After reviewing the relevant evidence, the court agrees that the two identical emails (ECF Nos. 1-10, 1-11) appear to be form emails. They do not include any personalized information outside of the greeting ("Hi Donald"), and include generic language and form attachments, a number of frequently asked questions, and an "unsubscribe" button. (ECF Nos. 1-10, 1-11). Additionally, the two emails were received by Jordan on Monday, July 22, 2019, a mere 14 seconds apart. (*See* ECF No. 1-11 (received at 2:37:05 AM); ECF No. 1-10 (received at 2:37:19)). These form emails do not suggest that Defendant Armstrong had a substantial connection to Michigan or would have believed that he could have been haled into court here. *See Burger King Corp.*, 471 U.S. at 475-76; *see also SFS Check, LLC*, 900 F. Supp. 2d at 773 (holding that two telephone calls with Plaintiff were insufficient to support a finding of personal jurisdiction). As such, the R&R correctly concludes that Plaintiff has not met their slight burden to

establish jurisdiction over Defendant Armstrong and Plaintiff's ninth objection is

**OVERRULED**.  Defendant Armstrong is **DISMISSED** from the case.

iv.    *Personal Jurisdiction: Defendant Gilchrist*

Plaintiff argues that the court can exercise personal jurisdiction over

Defendant Gilchrist because he, along with the other individual Defendants, "in

one way or another, were involved in the making of the outdated, stale,

inaccurate, incomplete, unfair, deceptive, and/or misleading representations."

(ECF No. 1, PageID.48).  The R&R, however, concludes that these actions, without

more, are insufficient to confer personal jurisdiction.  (ECF No. 52, PageID.1642).

Plaintiff's tenth objection argues that the R&R "ignore[s] all the other

evidence supplied by Plaintiff" and incorrectly concludes that the "complaint only

states general allegations of wrongdoing against Gilchrist."  (ECF No. 55,

PageID.1796).  Specifically, Plaintiff argues that "Defendant Gilchrist, <u>individually</u>,

is named as the 'franchise seller [] offering the franchise' in both the 4/19/18 FDD

and the 4/18/19 FDD…so it cannot be argued that he was not aware of the

differences between these two FDDs…" *Id.*, PageID.1797.  Plaintiff also notes that

the R&R incorrectly states that Defendant Gilchrist signed the franchise

agreements, which he did not.  *Id*.

As stated above, "the fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation." *SFS Check,* 990 F. Supp. 2d 762 at 771. Plaintiff's allegations against Defendant Gilchrist are rooted solely in his role as the "CEO and actual franchise seller," and do not allege he took any individual action that would rise to the level of purposeful availment.  Additionally, while the cited franchise agreement does list Defendant Gilchrist as the "franchise seller," it lists Defendant F45's principal business address and number next to his name.  (ECF No. 1-1, PageID.255).  This does not suggest that he was acting individually, but rather suggests he was acting in his role as an executive of Defendant F45. *See Luxury Concepts, Inc,* 2023 WL 3606649, at * 5 ("Plaintiff has not alleged that the individual Defendants engaged in any activities other than in their capacities as directors of Bateel, which is not enough for personal jurisdiction to attach.").  Likewise, the R&R correctly concludes that Plaintiff has not met their slight burden to establish jurisdiction over Defendant Gilchrist and Plaintiff's tenth objection is **OVERRULED**.  Defendant Gilchrist is **DISMISSED** from this case.

                    v.      *Personal Jurisdiction: Defendant Abrahams*

        Plaintiff's complaint bases personal jurisdiction over Defendant Abrahams

on "emails exchanged between Abrahams and Jordan regarding an additional

Michigan franchise location," in which Plaintiff alleges "Abrahams committed

fraud, fraudulent inducement, misrepresentation, and negligent

misrepresentation along with violations of several statutes."  (ECF No. 52,

PageID.1643; *see also* ECF No. 38-2; ECF No. 1, PageID.40-42).  Plaintiff also

argues that Defendant Abrahams, along with the other individual Defendants

"assisted in the development, construction, and/or issuance of the April 19, 2018

Franchise Disclosure Document."  (ECF No. 1, PageID.40-42).  The R&R concedes

that, "if the emails Abrahams sent to Jordan contained fraudulent statements, the

Court could properly exercise personal jurisdiction over him," but notes that

"Functional HIIT does not identify any fraudulent statement(s) contained in the

emails."  (ECF No. 52, PageID.1644).  Plaintiff's objection disagrees, arguing that

"Plaintiff and Abrahams not only had phone calls and emails, but Abrahams

forced Plaintiff to sign a backdated receipt that said Plaintiff received a franchise

disclosure statement when, in fact, Plaintiff did not."  (ECF No. 55, PageID.1799).

        First, the court notes that Plaintiff's complaint does not include any

allegations that Defendant Abrahams forced Plaintiff to sign and backdate any

documents, and this seems to have been first raised at oral argument.  (*See* ECF No. 53, PageID.1732) ("…Mr. Abrahams subsequently, after the franchise agreement was signed, forced my client to sign a document saying he did receive it and backdate that document").  Next, even if a plaintiff can establish that a defendant's actions were sufficient to meet the purposeful availment test, the court still must determine whether the harm that forms the basis of the plaintiff's lawsuit is directly related to or "arising out of" the defendant's actions.  *See* Mich. Comp. Laws § 600.705.  Likewise, as the R&R concluded, it is insufficient for Plaintiff to simply show that Defendant sent emails to Plaintiff, the emails must also be directly related to Plaintiff's claims in this lawsuit.  The court agrees with the R&R that the submitted emails do not include any such relevant information. (*See* ECF No. 52, PageID.1644).

The allegations against Defendant Abrahams are in direct contrast to the allegations against Defendant Marano, in which Plaintiff argues that Defendant Marano's emails to Jordan included the Franchise Disclosure Document and a "link to a spreadsheet for a financial model which showed a franchise studio reaching breakeven on case flow of just over four (4) months and a payback period of eighteen (18) months with an internal rate of return (IRR) of around 66%." *Id.* PageID.1645 (citing ECF No. 1, PageID.23).  Plaintiff specifically alleges

that "[t]hose financial performance representations are, and were at the time

they were made, false, inaccurate, incomplete, unfair, deceptive, and/or

misleading, and were made to induce [Functional HIIT] into a franchise

relationship." *Id*. (citing ECF No. 1, PageID.23).  In other words, not only were

Defendant Marano's emails to Jordan sufficient to show purposeful availment,

they also formed the basis of one of Plaintiff's claims.

Plaintiff alleges Defendant Abrahams committed "fraud, fraudulent

inducement, misrepresentation, and negligent misrepresentation along with

violations of several statutes," but does not specify any statements made in his

emails that were allegedly fraudulent.  (ECF No. 52, PageID.1643; *see also* ECF No.

38-2; ECF No. 1, PageID.40-42).  Likewise, even viewing the facts in the light most

favorable to Plaintiff, the R&R correctly concludes that the court cannot exercise

personal jurisdiction over Defendant Abrahams and Plaintiff's eleventh objection

is **OVERRULED**.  Defendant Abrahams is **DISMISSED** from this case.

> vi.    *Personal Jurisdiction: Defendant Deutsch*

Like Defendant Gilchrist, Plaintiff argues the court can exercise personal

jurisdiction over Defendant Deutsch because he, along with the other individual

Defendants, "in one way or another, were involved in the making of the outdated,

stale, inaccurate, incomplete, unfair, deceptive, and/or misleading

representations." (ECF No. 1, PageID.48). Plaintiff's objection argues the R&R

fails to acknowledge that Defendant Deutsch "was listed as the responsible

person in Item 19 of the FDD in case any person connected with F45 made

financial performance representations outside the FDD." (ECF No. 55,

PageID.1801). However, again, Plaintiff has not alleged how Defendant Deutsch's

actions rose to the level of purposeful availment beyond his role as an officer of

Defendant F45. *See SFS Check, LLC*, 990 F. Supp. 2d at 771. Likewise, the R&R

correctly concluded that Plaintiff has not met their slight burden to establish

jurisdiction over Defendant Deutsch and Plaintiff's twelfth objection is

**OVERRULED**. Defendant Deutsch is **DISMISSED** from this case.

> B.  Choice of Law

The court must next determine which state's law applies to this dispute,

and which, if any, of Plaintiff's statutory claims must be dismissed. After engaging

in a lengthy choice-of-law analysis, the R&R concludes that the parties' choice-of-

law provision in the Franchise Agreement is valid, Delaware law applies to the

entire dispute, and Plaintiff's claims under the MIFL and CFIL must be dismissed.

(ECF No. 52, PageID.1657). After engaging in its own *de novo* choice-of-law

analysis, however, the court finds that applying Delaware law would be "contrary

to a fundamental public policy" of Michigan, and Michigan law should govern this

dispute.

       i.  *Plaintiff's Objection No. 2*

Plaintiff's second objection directly challenges the R&R's finding that

Delaware law should apply and argues, instead, that the parties' claims should be

governed by Michigan law.  (ECF No. 55, PageID.1764-65).  The law guiding the

relevant choice-of-law analysis is not disputed by either party.  The R&R correctly

sets out the basic framework as follows:

> In order to determine the validity of the agreement's choice-of-law
> provision, this Court must apply "the choice-of-law rules of the state
> in which the district court sits—in this case, Michigan." *Baker Hughes
> Inc. v. S&S Chem., LLC*, 836 F.3d 545, 560 (6th [Cir.] 2016). Michigan
> applies the Restatement (Second) of Conflicts of Laws § 187. *See
> Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528
> N.W.2d 698, 703-704 (1995). Under § 187(2), a choice-of-law
> provision will apply unless either:
>
> > (a) the chosen state has no substantial relationship to the
> > parties or the transaction and there is no other reasonable
> > basis for the parties' choice,[5] or

---

[5] In Plaintiff's reply to Defendants' response to Plaintiff's objection, Plaintiff argues that
Defendants have mischaracterized their position and they *do* argue that "Delaware lacks any
'substantial relationship' within the meaning of Restatement (Second) of Conflict of Laws
§ 187(2)(a)."  (ECF No. 58, PageID.1893).  However, this argument is unpersuasive.  While
Plaintiff may object to this finding, their complaint states that "[u]pon information and belief,
F45 is a Delaware corporation…"  (ECF No. 1, PageID.5).  The fact that Defendant F45 is a
corporation based in Delaware certainly creates a significant relationship and satisfies the
Restatement's test.  *See Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 932 (E.D. Mich. 2008)
("inasmuch as Lowry was a Michigan corporation, Michigan had a substantial relationship to the
parties and the transaction.").

> (b) application of the law of the chosen state would be
> contrary to a fundamental public policy of a state which has a
> materially greater interest than the chosen state in the
> determination of the particular issue and which, under the rule
> of § 188, would be the state of the applicable law in the
> absence of an effective choice of law by the parties.
>
> Restatement (Second) of Conflict of Laws § 187(2) (1971); see also
> *Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir.
> 1993)..."In order for the chosen state's law to violate the
> fundamental policy of [the other locale], it must be shown that there
> are significant differences between the application of the law of the
> two states." *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd*., 814
> F.2d 1120, 1123 (6th Cir. 1987) (citation omitted)

(ECF No. 52, PageID.1650-51).

It is undisputed that the MFIL represents a fundamental public policy of

Michigan.  (ECF No. 55, PageID.1766; ECF No. 52, PageID.1652); *see also Buist v.*

*Digital Message Sys. Corp.*, No. 229256, 2022 WL 31957703, at *3 (Mich. Ct. App.

Dec. 27, 2002) ("A fundamental policy may be embodied in a statute...which is

designed to protect a person against the use of superior bargaining power.").

Plaintiff argues, however, that there are a number of "significant differences"

between the MFIL and Delaware law, meaning that application of Delaware law

would be "contrary to a fundamental public policy" of Michigan and it should not

be applied to this dispute.  (ECF No. 55, PageID.1777).  Specifically, Plaintiff argues

that the R&R incorrectly "focused its comparison analysis of Michigan law and

Delaware law <u>solely on whether there was a common law remedy</u> under

Delaware common law and neglected in its entirety the statutory offering process

designed to protect franchisees such as plaintiff." *Id.*, PageID.1767.  Plaintiff

acknowledges three aspects of the statutes that it believes were not sufficiently

addressed by the R&R: (1) the fact that Delaware law has no pre-contract

protections or disclosure requirements, (2) the fact that the MFIL makes certain

provisions void and unenforceable under Michigan law, but Delaware law does

not, and (3) the fact that the MFIL provides remedies beyond the single recission

remedy that are not available in Delaware or under common law.  *Id.*,

PageID.1767-69.  The court agrees that there are a number of differences

between franchise law in Delaware and in Michigan.  However, the key question is

not whether there are *any* differences between the laws but rather whether

these differences would result in "a substantial erosion of the quality of

protection that the MFIL would otherwise provide." *Banek, Inc.*, 6 F.3d at 362.

Plaintiff's MFIL claims argue that Defendants: (1) fraudulently induced

Plaintiff into a franchise relationship (Count VI), (2) failed to satisfy the statutory

pre-contract disclosure requirements (Count VII), and (3) made statements that

proved to be false, misleading and incomplete (Count VIII). (ECF No. 1, PageID.45-

47).  The R&R is correct that Delaware common law creates a number of remedies

for individual franchisees who have been fraudulently induced into franchise agreements, including recission.  (*See* ECF No. 52, PageID.1655) ("Functional HIIT is able to sue for recession under both Michigan statutory law and Delaware common law") (citing *Tele-Save Merch. Co.*, 814 F.2d at 1139).  However, Delaware law does not include *any* of the notice or disclosure requirements which are included in the MFIL "to make certain contract provisions illegal and to protect potential franchisees from the superior bargaining power of franchisors." *Martino v. Cottman Transmission Sys., Inc.*, 218 Mich. App. 54, 61 (1996).

The parties generally rely on four applicable cases in their arguments: *Banek, Inc.*, 6 F.3d 357; *Martino,* 218 Mich. App. 54; *Tele-Save Merch. Co.*, 814 F.2d 1120; and *Buist*, 2002 WL 31957703.  The R&R relies on *Banek, Inc.* and *Tele-Save Merch. Co.*, both of which found the application of a different state's law would *not* be contrary to the public policy of the forum state.  *Banek, Inc.*, 6 F.3d at 363 ("The application of Georgia law in this context would not be violative of a public policy of Michigan and therefore should be enforced."); *Tele-Save Merch. Co.*, 814 F.2d at 1123 ("We find nothing under the facts before us to indicate that the application of New Jersey law would be repugnant to or clearly contrary to the public policy of Ohio.").  Plaintiff relies on *Martino* and *Banek*, both of which found the application of another state's law *would* be a violation of the

fundamental public policy of Michigan.  *Martino*, 218 Mich. App. at 61 ("Applying

Pennsylvania, rather than Michigan, law would result in a substantial loss of

protection provided by the MFIL.  As franchisors under Pennsylvania law do not

have to provide the notice required by the MFIL, Pennsylvania's franchise law

violates the fundamental public policy of Michigan."); *Buist*, 2002 WL 31957703,

at *4 (finding the trial court did not err in concluding "applying Florida law in this

case would result in a substantial loss of protections to franchisees and thus be

'contrary to the fundamental policy' of the MFIL.").

        None of these cases directly evaluate the differences between Michigan

and Delaware law, but their reasoning can be used to guide this court's analysis.

The R&R argues that the facts of the case at hand are distinguishable from both

*Martino* and *Buist,* because "[n]ot only does this case involve different provisions

of the MFIL – regarding notice – but it also involves a different state law."  (ECF

No. 52, PageID.1654).  However, the reasoning behind *Martino* and *Buist*, both of

which are decisions from Michigan courts made more recently than either *Banek*

or *Tele-Check*, is persuasive.  Plaintiff specifically brings one of their claims under

Mich. Comp. Laws § 445.1508, which requires franchisors to make a series of

disclosures at least 10 business days before the execution of a binding franchise

agreement.  Mich. Comp. Laws § 455.1508(1).  These requirements are

specifically designed to ensure a prospective franchisee has all of the information

required to make an informed decision, protecting them from "the superior

bargaining power of franchisors." *Buist*, 2002 WL 31957703, at *3. Removing this

protection by applying Delaware law would be contrary to the fundamental goal

of the MFIL, which is to "protect franchisees from overreaching by franchisors and

from the superior bargaining power franchisors possess." *Banek, Inc.*, 6 F.3d at

361.

Additionally, the R&R fails to address the fact that the Sixth Circuit in both

*Buist* and *Tele-Save Merch. Co.,* focused on the fact that the parties to each

relevant contract were sophisticated business entities, making it more reasonable

to apply their choice-of-law provisions. *Tele-Save Merch. Co.*, 814 F.2d at 1124

("To the contrary in the present case we have a freely negotiated contract

between parties of relatively equal bargaining strength."); *Banek, Inc.*, 6 F.3d at

362 n.2 ("Banek was not forced into this investment decision, but chose to

negotiate an agreement with the defendant. Having negotiated that agreement,

including several changes beneficial to Banek's position, it is now attempting to

escape one of the contract's provisions."). In this case, the parties did not have

equal bargaining power, and there is no indication that the contract was fully

negotiated.

Given Michigan's strong interest in protecting franchisees from the "superior bargaining power" of franchisors, the court is convinced that choosing to apply Delaware law, under which there are *no* notice or disclosure requirements, over Michigan law would result in a "substantial erosion of the quality of protection the MFIL would otherwise provide." *Banek, Inc.*, 6 F.3d at 362; *see also Buist*, 2002 WL 31957703, at *4 (finding there would be a substantial loss of the protections provided by the MFIL because Florida law has no disclosure requirements and provides limited protection to franchisees.). Likewise, the parties' choice-of-law provision will not be applied and Michigan law, not Delaware law, will govern this dispute. Plaintiff's second objection is **SUSTAINED,** and the R&R is **MODIFIED** to apply Michigan law to the remaining claims.

ii. *Plaintiff's Objection No. 1*

Also relevant to the choice of law analysis, Plaintiff's first objection disagrees with the R&R's "inconsistent determination that the notice prohibiting venue provisions under section 8(1) (Mich. Comp. Laws 445.1508(1)) of the MFIL is required despite a choice of law provision, but that Plaintiff's claims based on the same 10 business day notice requirement to provide the franchise disclosure document in the very same sentence of section 8.1 (Mich. Comp. Laws

§ 445.1508(1)) are not and should be dismissed." (ECF No. 55, PageID.1790). This objection "focuses narrowly on the dismissal of Count VII of the Complaint" which Plaintiff argues was made in error because "the Sixth Circuit…ha[s] recognized that the enumerated provisions of the MFIL are a fundamental policy, such as the giving of a notice that forum selection clauses that require litigation outside of Michigan are void." *Id*. Given that the court agrees with Plaintiff's contention that Michigan law is applicable to this dispute and Count VII remains, it is not necessary to specifically address this objection.

      iii.   *Plaintiff's Objection No. 3*

Plaintiff next objects to the R&R's finding that Defendant F45's repeated advice to Plaintiff that the MFIL applied did not preclude them from taking a contrary position in this litigation. (ECF No. 55, PageID.1778). However, because the court has found that Michigan law governs this dispute, it is not necessary to address whether any separate agreement to be bound by Michigan law affects the choice-of-law provision.

      iv.   *Plaintiff's Objection No. 4*

Plaintiff next objects to the R&R's determination that the "language of the choice of law provision in the franchise agreements applied to violations of the MFIL" and its pre-agreement franchise disclosure process. *Id.*, PageID.1781.

36

Again, because the court found that the choice-of-law provision is not applicable and this dispute is governed by Michigan law, it is not necessary to address this objection.

### v.  Plaintiff's Objection No. 5

Plaintiff's fifth objection merely restates that "[a]s addressed in other objections, it was error to dismiss these Counts when the Report and Recommendation should have applied the MFIL to the Plaintiff's claims." *Id.*, PageID.1789.  This objection raises the same general points as the previous objections, and merely asserts that the R&R reaches the wrong conclusion in dismissing the MFIL claims.  Because the court agrees with Plaintiff that Michigan law applies to this dispute and Counts VI and VII remain, this objection is **SUSTAINED.**

### vi.  Plaintiff's Objection No. 8

Plaintiff's eighth objection argues the R&R was incorrect in dismissing Count VIII of the Complaint and failing to apply MFIL section 32 (Mich. Comp. Laws §445.153) to find that Plaintiff pled a viable cause of action against all the individual Defendants. *Id.*, PageID.1792.  Again, this objection raises the same general points as the previous objections, and merely asserts that the R&R reaches the wrong conclusion in dismissing the MFIL claims.  Because the court

agrees with Plaintiff that Michigan law applies to this dispute and Count VIII

remains, this objection is **SUSTAINED.**

    C.  <u>Substantive Claims</u>

        *i.  Count I: Breach of Contract*

In order to state a claim for breach of contract under Michigan law, a party

must establish: "(1) there was a contract (2) which the other party breached (3)

thereby resulting in damages to the party claiming breach."  *Miller-Davis Co. v.*

*Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014).  Defendants' first objection argues

that the R&R improperly relies on provisions from the pre-contractual Franchise

Disclosure Documents, not the Franchise Agreements between the parties, to

conclude that Plaintiff sufficiently stated a breach of contract claim.  (ECF No. 54,

PageID.1737).  Likewise, the key question raised by this objection is whether

Plaintiff sufficiently alleged the breach of an obligation imposed directly by the

contract between the parties.

The R&R focuses on three specific allegations in Plaintiff's complaint: (1)

Plaintiff's allegation that the Franchise Disclosure Document incorrectly listed the

costs of "Leasehold Improvements" as being between $1,000 and $10,000, when

they were actually much higher; (2) Plaintiff's allegation that they were

overcharged for heart rate monitors; and (3) Plaintiff's allegation that F45 failed

to disclose the cost of music licensing fees.  (ECF No. 52, PageID.1658).  While it is undisputed that the music license fees and leasehold improvement amounts were not tied to specific provisions of the Franchise Agreements, the amount of LionHeart heart rate monitors was set out in the Franchise Agreements, Schedule 1, "Opening Package Addendum." (ECF No. 56, PageID.1816) ("There was no mention of music license fees in the 4/19/18 FDD or the Franchise Agreements.  The amount for leasehold improvements and heart rate monitors were set out in the 4/19/18 FDD…").

The relevant Opening Package Addendum to the Franchise Agreement states: "[t]he Opening Package will contain the inventory, goods, accessories, furnishing, fixtures, merchandise, signage, and marketing collateral listed in the Schedule 1…" (ECF No. 1-8, PageID.631).  The Addendum also states: "[f]ranchisee must pay the price for the Opening Package as set forth in Item 9 of the Summary Addendum ("Price.")."  *Id.*  Schedule 1 states that the Opening Package will contain 210 LionHeart heart rate monitors as part of the "Heart Rate Pack."  *Id.*, PageID.638.  Plaintiff's complaint argues "[w]ithout Plaintiff's knowledge, agreement, or consent, and after Plaintiff had already paid for the 210 monitors, F45 unilaterally changed the quantity of Lionheart branded heart rate monitors from 210 to 130 units.  F45 does not have the right to do this under

the applicable Franchise Agreement." (ECF No. 1, PageID.37).  Because this claim

forms part of Plaintiff's single count for breach of contract, and the relevant

amount is directly listed in the signed Franchise Agreement, Plaintiff has alleged

enough to state a claim for breach of contract.

As such, the court need not, at this point, make a determination as to

whether Plaintiff's additional claims regarding the music licensing and leasehold

improvement amounts should proceed.  Likewise, the issue of whether the

Franchise Agreements fully incorporate the Franchise Disclosure Documents will

be better addressed at a later stage of the litigation, not on a motion to dismiss.

Defendants' first objection is **OVERRULED** and Defendants' motion to dismiss is

**DENIED** as to Count I for breach of contract.

ii.     *Counts III and IV, Fraud and Negligent Misrepresentation*

Defendants' third objection argues that statements regarding future events

cannot support a claim of fraud or negligent misrepresentation and, therefore,

Counts III and IV should be dismissed.  (ECF No. 54, PageID.1741).  Under

Michigan law, a claim for common law fraud requires a plaintiff to allege: "(1) the

defendant made a material misrepresentation; (2) the representation was false;

(3) when the defendant made the representation the defendant knew that it was

false, or made it recklessly, without knowledge of its truth as a positive assertion;

(4) the defendant made the representation with the intention that the plaintiff

would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff

suffered damage." *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 695-96 (2009)

(citing *M & D, Inc. v. McConkey*, 231 Mich. App. 22, 27 (1998)).  A claim for

negligent misrepresentation under Michigan law requires "plaintiff to prove that a

party justifiably relied to his detriment on information prepared without

reasonable care by one who owed the relying party a duty of care."  *Alfieri v.*

*Bertorelli*, 295 Mich. App. 189, 194 (2012) (citing *Unibar Maintenance Servs., Inc.*

*v. Saigh*, 283 Mich. App. 609, 621 (2009)).

　　　Plaintiff's complaint generally states that "Defendants made

representations regarding various aspects of the F45 franchise program and

system to Plaintiff, which Defendants knew or believed to be false."  (ECF No. 1,

PageID.40).  The R&R finds that Plaintiff's claims for fraud and negligent

misrepresentation are likely based on three sources of information: "(1) a

spreadsheet titled 'F45 TRAINING EUR FINANCIAL MODEL;' (2) Marano's

statements…; and (3) statements contained in one or more Franchise Disclosure

Document[s]."  (ECF No. 52, PageID.1662).  The "F45 TRAINING EUR FINANCIAL

MODEL" spreadsheet details that "for a total investment of €194,500…there

would be a cash flow break even at just over four (4) months, and a payback

period on investment of eighteen (18) months." (ECF No. 1, PageID.30).

Defendant Marano's relevant statements were made on a phone call in which he

allegedly told Jordan "if he...followed the F45 program, his studios would break

even in three months and reach an EDITBA [sic] of 33% by the end of year one."

*Id.*, PageID.25. Plaintiff argues each of these financial performance

representations were "false, inaccurate, incomplete, unfair, deceptive, and/or

misleading, and were willingly made for the purpose of inducing [Plaintiff] into a

franchise relationship with [Defendant] F45." *Id.*, PageID.26. Plaintiff's claims in

Counts III and IV involving the Franchise Disclosure Documents mainly involve the

alleged concealment of a number of differences between the April 19, 2019

Franchise Disclosure Document and the April 19, 2018 Franchise Disclosure

Document. *Id*.

Generally, an action for fraud or fraudulent misrepresentation "cannot be

based on a promise of future conduct." *Derderian v. Genesys Health Care Sys.*,

263 Mich. App. 364, 378 (2004) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*,

398 Mich. 330, 336 (1976)). An exception exists where a promise is "made in bad

faith without the intention to perform it," but a plaintiff must demonstrate that

"at the time defendants made promises to them, defendants did not intend to

fulfill the promises." *Id.* at 379 (citations omitted). This exception includes only

statements involving the conduct of the actor, and does not involve generalized statements of future events. *Id.* Despite these general rules, however, "the mere fact that statements relate to the future will not preclude liability for fraud if the statements were intended to be, and were accepted as, representations of fact, and involved matters peculiarly within the knowledge of the speaker." *Foreman v. Foreman*, 266 Mich. App. 132, 143 (2005).

Plaintiff's allegations of fraud and negligent misrepresentation involve a series of statements made by Defendants that allegedly inflated the profitability of F45 fitness studios. (*See* ECF No. 1, PageID.34). Viewing the facts in the light most favorable to Plaintiff, they have sufficiently stated a claim for fraud, fraudulent inducement, and misrepresentation. Plaintiff has identified a series of statements they allege were "intended to be, and were accepted as, representations of fact" as to the profitability of the franchise, which were made by individuals who reasonably would have specific knowledge about their truth. *See Foreman*, 266 Mich. App. at 143. Likewise, the R&R was correct in determining that Counts III and IV should remain, and Defendants' third objection is **OVERRULED.**

Defendants' fourth objection also addresses Counts III and IV, and argues that the report does not identify any allegations that would plausibly support a

claim for fraudulent concealment.  (ECF No. 54, PageID.1744).  Specifically,

Defendants argue there can be no claim for fraudulent concealment because

Plaintiff was made aware of the updated 2019 Franchise Disclosure Document

before they executed the Franchise Agreements.  *Id.*, PageID.1745.  However,

contrary to Defendants' arguments, Plaintiff does not base their entire claim for

fraudulent concealment on the fact that Plaintiff was not made aware of the

existence of the new Franchise Disclosure Document, but rather on the fact that

Plaintiff never actually received a copy of the document, was told that it "would

not apply to Plaintiff's agreement with F45," and was not informed of seven of

the material differences between the two documents. (ECF No. 56, PageID.1826-

27).  Likewise, viewing the facts in the light most favorable to Plaintiff, they have

alleged enough to state a claim for fraudulent concealment at this stage.

Defendants' fourth objection is also **OVERRULED.**

> iii.  *Count V: Unjust Enrichment*

Defendants' second objection argues that the R&R was incorrect in

concluding that Plaintiff's ability to plead in the alternative insulates their unjust

enrichment claim from dismissal.  (ECF No. 54, PageID.1740).  Specifically,

Defendants argue that they do not need to answer in order to demonstrate the

failure of Plaintiff's unjust enrichment claim, because "[t]he Complaint itself does

not make any allegation that would plausibly support a conclusion that the contract is somehow nonexistent or invalid." *Id.* The R&R concludes that, "[a]lthough it appears that contracts exist in this case, Functional HIIT may nonetheless proceed on its unjust enrichment claim because it pleads this claim in the alternative." (ECF No. 52, PageID.1664) (citations omitted).

It is not disputed by either party that, in general, unjust enrichment is only a viable claim "if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478 (2003). However, a party may only plead an unjust enrichment claim and a breach of contract claim in the alternative "when there is some question of whether a contract actually existed." *Elia Companies, LLC v. Univ. of Michigan Regents*, 335 Mich. App. 439, 452 (2021), *rev'd on other grounds*, 511 Mich. 66 (2023) (citing *Keywell & Rosenfeld v. Bithell*, 294 Mich. App. 300, 327-28 (2002)). In other words, a plaintiff may only plead in the alternative if either party contests the enforceability or existence of the underlying contract or contracts. Where, as here, both parties have conceded and relied on the enforceability of the contracts, alternative pleading is not permitted. *See id.*

The R&R reasoned that "F45 has not answered the complaint and admitted the existence of a contract," so there may still be a question remaining as to its

validity.  (ECF No. 52, PageID.1665).  However, Defendant F45 chose to file a

motion to dismiss in lieu of answering the complaint pursuant to Fed. R. Civ. P.

12(b) in which they affirm the existence of a valid contract.  (*See* ECF No. 17,

PageID.901) ("Further, in view of the undisputed fact that the parties' relationship

is subject to a written contract, Functional cannot assert a claim for unjust

enrichment.").  Defendants' objections again affirm the existence of a contract.

(ECF No. 54, PageID.1740) ("The Complaint itself does not make any allegation

that would plausibly support a conclusion that the contract is somehow

nonexistent or invalid.").  Likewise, because neither the complaint nor any of the

remaining Defendants' pleadings suggest the Franchise Agreements were invalid,

Plaintiff's claim for unjust enrichment cannot stand.  Defendants' second

objection is **SUSTAINED**, the R&R is **MODIFIED**, and Count V of Plaintiff's

complaint is **DISMISSED.**

> iv.  *Counts VI, VII, and VIII: Violations of the MFIL*

The R&R dismissed Counts VI-VIII solely based on the applicable choice-of-

law standard.  Defendants' motions to dismiss similarly base their arguments for

dismissal of these claims on the inapplicability of Michigan law to this dispute.

(ECF No. 17, PageID.917) ("[Plaintiff] cannot state any claim under the MFIL or

CFIL because it agreed that Delaware law would apply to the parties' contracts.").

Because the court now finds that Michigan law applies to the parties' dispute, not Delaware law, the R&R is **MODIFIED** and Counts VI-VII remain.

    *v.  Counts IX and X*

The court agrees with the R&R's conclusion that both Count IX, asserting a claim for a violation of the CFIL, and Count X, asserting a claim for a violation of the Delaware Uniform Deceptive Trade Practices Act, must be dismissed because, now, Michigan law applies to this dispute.

**VI.    CONCLUSION**

Following a thorough *de novo* review, the court **MODIFIES** the R&R as to Counts V, VI, VII, and VIII, and **ACCEPTS AND ADOPTS** the R&R's reasoning as to all other claims.  Defendants' motions to dismiss (ECF Nos. 17, 18, 20, 48) are **GRANTED IN PART** and **DENIED IN PART.**  Counts II, V, IX, and X are hereby **DISMISSED.**  Defendants Armstrong, Gilchrist, Abrahams, and Deutsch are **DISMISSED** from the matter.  Additionally, Plaintiff's motion to strike (ECF No. 61) is **DENIED** and Plaintiff's motion to supplement the record (ECF No. 63) is **DENIED.**

This order does not close this case, as Plaintiff may still proceed with Counts I, III, IV, VI, VII, and VIII against Defendants F45 and Marano.

    **SO ORDERED**.

Date: September 28, 2023                    s/ F. Kay Behm
                                            F. Kay Behm
                                            United States District Judge